BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHRISTIE REED, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC PET PRODUCTS and FRICK'S MEAT PRODUCTS, INC.,<br><br>Defendants. | Case No.: **'15CV0987 WQHDHB**<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>1. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*;<br>2. VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*;<br>3. BREACH OF IMPLIED WARRANTY;<br>4. FRAUD; and<br>5. NEGLIGENT MISREPRESENTATIONS<br><br>DEMAND FOR JURY TRIAL |

BLOOD HURST & O'REARDON, LLP

00083407

Case No.
CLASS ACTION COMPLAINT

Plaintiff Khristie Reed ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendants Dynamic Pet Products ("Dynamic") and Frick's Meat Products, Inc. ("Frick's") (collectively, Dynamic and Frick's are referred to as "Defendants"), and states:

## NATURE OF THE ACTION

1.      This is a consumer protection class action arising out of misrepresentations and omissions made by Defendants Dynamic Pet Products and Frick's Meat Products, Inc.  Frick's is a meat processor.  In an effort to profit from the waste resulting from the manufacture of its products, Frick's or its principals created Dynamic to sell waste ham bones to pet owners.  Through Dynamic, a wholly owned subsidiary of Frick's, Defendants manufacture, market and sell the Dynamic Pet Products Real Ham Bone For Dogs, an 8" hickory-smoked pork femur, as an appropriate and safe chew toy for dogs.  Indeed, on each product label Defendants clearly state that this is a "Dynamic Pet Products Real Ham Bone For Dogs."

2.      The Real Ham Bone For Dogs is not appropriate for dogs and is not safe for its intended purpose, despite Defendants' contrary representations.  When chewed, Real Ham Bones For Dogs are prone to splintering into shards, which then slice through dogs' digestive systems.  Thousands of dogs have suffered a terrible array of illnesses, including stomach, intestinal and rectal bleeding, vomiting, diarrhea, constipation and seizures, and have died gruesome, bloody deaths as a result of chewing Defendants' Real Ham Bone For Dogs.

3.      Defendants have known as early as 2006 that the Real Ham Bone For Dogs is not safe or appropriate for dogs.  Over the past nine years, thousands of consumers have complained directly to Defendants about the horrible injuries that their pets have suffered after chewing on the Real Ham Bone For Dogs.  Responding to public outcry, in 2010 the Missouri Better Business Bureau alerted Defendants about the numerous complaints it received.

BLOOD HURST & O'REARDON, LLP

4.     Also in 2010, similarly responding to customer complaints, the Food and Drug Administration issued a notice that bones such as the Real Ham Bone For Dogs are not suitable for dogs.  The FDA found that "bones are unsafe for your dog" and that giving bones to dogs is a "dangerous practice and can cause serious injury."  These injuries, the FDA noted, include pieces of bone becoming lodged in the dog's esophagus, windpipe, stomach, or intestines, constipation, severe bleeding from the rectum, and deadly bacterial infections.

5.     Despite knowing that the Real Ham Bone For Dogs is dangerous and not appropriate for dogs, Defendants expressly and impliedly represented and continue to represent on the label of each Real Ham Bone for Dogs and on Dynamic's website and other marketing that the Real Ham Bone For Dogs is "safe for your pet" and is "meant to be chewed."  As a result of Defendants' misrepresentations, Plaintiff and the proposed Class have purchased a product that is other than that which they thought they were purchasing and one which is not fit for its intended purpose.

6.     Plaintiff brings this action on behalf of herself and other consumers who have purchased Real Ham Bone For Dogs.  Plaintiff seeks redress and an injunction preventing Defendants from marketing the Real Ham Bone For Dogs to consumers as an appropriate chew toy for dogs or, at a minimum, requiring Defendants to meaningfully inform consumers about the dangers and inappropriateness of giving this product to dogs.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the class are citizens of a state different from Defendants.

BLOOD HURST & O'REARDON, LLP

8. This court has personal jurisdiction over Defendants because Dynamic and Frick's are authorized to conduct business and do conduct business in California. Defendants have marketed, promoted, distributed, and sold the Real Ham Bone For Dogs in California and have sufficient minimum contacts with this State and/or have sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing, to render the exercise of jurisdiction by this Court permissible.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claim occurred because Plaintiff purchased the Real Ham Bone For Dogs in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transact substantial business in this District.

## PARTIES

10. Plaintiff Khristie Reed resides in Vista, California. On Sunday, March 1, 2015, Plaintiff purchased an individually packaged Dynamic Pet Products Real Ham Bone For Dogs from Wal-Mart in Oceanside, California, paying $3.48. Plaintiff found the product in the pet toys aisle, the area of the store in which Defendants intended the product to be sold. Prior to making the purchase, Plaintiff read the label for the Real Ham Bone For Dogs. The label stated expressly and impliedly that the Real Ham Bone For Dogs was meant for dogs and was safe for dogs to chew on. The label omitted material information about the safety of the Real Ham Bone For Dogs, including that it was not appropriate for dogs and that dogs who chewed on it were subjected to serious health risks, including death. In reliance on the express and implied representations, unaware of the material omitted facts, and based on her reasonable expectation that it was safe for her dog, Plaintiff purchased the Real Ham Bone For Dogs.

BLOOD HURST & O'REARDON, LLP

11.     When Plaintiff returned home from Wal-Mart, she gave the Real Ham Bone For Dogs to Fred, her healthy nine-year-old basset hound.  Plaintiff watched Fred chew on the Real Ham Bone For Dogs for approximately one hour, after which point Fred walked away and did not chew on it again.  The next day, Monday March 2, 2015, Fred was lethargic and vomiting blood.  Plaintiff immediately rushed Fred to California Veterinary Specialists in Carlsbad, California.  The veterinarian told Plaintiff that Fred was gravely ill and there was no guarantee that surgery would save him.  According to the veterinarian, the only way to alleviate Fred's suffering was to put him to sleep.  Plaintiff took the veterinarian's advice and Fred was euthanized that evening.  Had Plaintiff known the truth about the Real Ham Bone For Dogs, Plaintiff would not have purchased the product and would not have given it to her dog.  As a direct result of Defendants' conduct as described herein, Plaintiff purchased an unsafe product that she reasonably believed to be safe and suffered injury in fact and lost money and property.

12.     Defendant Dynamic Pet Products is a Missouri Corporation with its headquarters located at 360 M E Frick Dr., Washington, MO 63090-1050.  Dynamic is in the business of manufacturing and selling chew toys for dogs and holds itself out to the public as a manufacturer of safe, high-quality pet products.  Dynamic has sold the Real Ham Bone For Dogs since 2001.  The Real Ham Bone For Dogs is Dynamic's "number one seller."  Dynamic has marketed, distributed, and sold the Real Ham Bone For Dogs to many thousands of consumers in the United States through nationwide retailers such as Wal-Mart, Sam's Club, H.E.B., and Dollar General.  Dynamic also sells the Real Ham Bone For Dogs directly to consumers nationwide through direct sales websites such as www.walmart.com and www.heb.com, and its own website, www.dynamicpet.net.  Dynamic's website is a virtual store where consumers can view descriptions and pictures of the products, make purchases and have items shipped directly to them.  On its website, Dynamic charges consumers $36.00 for a case of 12 Real Ham Bone For Dogs, or $72.00 for

a case of 24.

13.    Defendant Frick's Meat Products, Inc. is a Missouri Corporation with its headquarters at the same location as Dynamic's, 360 M E Frick Dr., Washington, MO 63090-1050. Frick's Meat Products Inc. is a major meat product manufacturer and supplies sausages and other prepared meats to food retailers nationwide. As a nationwide distributor, Frick's generates considerable slaughter house waste, *i.e.*, the bones and trimmings of a slaughtered animal that cannot be sold as meat or used in meat-products. In an effort to profit from the waste resulting from the manufacture of its products, Frick's knowingly and intentionally supplies Dynamic with bones for the purpose of selling them as the Real Ham Bone For Dogs. Dynamic and Frick's share the same ownership, management and headquarters and are the alter egos of one another. Frick's and Dynamic work in concert with each other to profit off the sale of waste ham bones, marketing them to pet owners as safe and appropriate chew toys for dogs, when they are not.

## FACTUAL ALLEGATIONS

14.    In an effort to profit from the waste resulting from the manufacture of its products, Frick's, or its principals, created Dynamic to sell waste ham bones to pet owners, marketing them as appropriate and safe for dogs. Through Dynamic, Defendants manufacture, market and sell the Real Ham Bone For Dogs, an 8" hickory-smoked pork femur, as a chew toy for dogs. On each label, Defendants clearly state that this is "for dogs."

15.    In reality, the Real Ham Bone For Dogs is not appropriate for dogs and is not safe for its intended purpose, despite Defendants' contrary representations. When chewed, the Real Ham Bone For Dogs is prone to splintering into shards, which then slice through the dog's digestive system. Thousands of dogs have suffered a terrible array of illnesses, including stomach, intestinal and rectal bleeding, vomiting, diarrhea, constipation and seizures, and have died gruesome, bloody deaths as a result of chewing Defendants' Real Ham Bone For Dogs.

16.    Defendants knew (or should have known) for many years that the Real Ham Bone For Dogs posed an unreasonable risk of harm to Plaintiff and the proposed Class members' dogs.  Since 2006, consumers have complained to Dynamic directly and posted thousands of complaints to online forums after their pets became ill or died after chewing on the Real Ham Bone For Dogs.  The complaints evince a common and continuing danger, of which Defendants are fully aware, that Defendants have failed to warn consumers about.

- On March 22, 2015, a dog owner reported: "I bought this horrible bone at caputo's market…over the weekend and now my poor dog Diva is suffering cause of this bone.  I discovered her in shock and couldn't move.  She puked and had Diarrhea and couldn't stand up. So we rushed her to the vet.  She has spent 3 days in the hospital on iv's, pain meds, antibiotics and had a fever trying to pass this deadly bone.  A week later we had to bring her back and now waiting to see how she improves.  So far vet bills are over $2400."

- On March 21, 2015, another dog owner reported: "We had bought a Dynamic Pet Real Ham bone at Walmart the other day.  The next day he went outside to go to the bathroom and I heard a scream like he was being killed.  I ran to go see what was wrong, my poor dog was so bound up with the bone his poop was stuck and he could not pass it.  That was 3 days ago.  He is still not better he is having a hard time going to the bathroom and vomiting."

- On March 11, 2015, another dog owner reported: "On February 21, 2015 I bought a dynamic ham bone for my dog, Checkers.  I gave it to him.  Within 8 hrs he was throwing up, panting, pacing, and having diarrhea.  I rushed him to the vet they xrayed him and found bone splinters in his stomach.  He needed IV therapy for a couple of days, powerful pain medication, and antibiotics and be on a special diet.  I knew cooked bones aren't good for dogs but I thought if they sell it in the pet section that it must be safe.  It won't splinter.  Well I was wrong."

- On March 8, 2015, another dog owner reported: "My fiancé bought this real ham bone for our 9 month puppy to occupy her time on Friday March 6, 2015.  On Saturday, March 7 at 3 AM, I woke up to see my puppy in her own urine in her crate (she has never made a mess in her crate).  That Saturday afternoon, she could not make it outside to poop and ended up pooping on the floor in the house and I immediately took her outside where she had Diarrhea. It is now Sunday and she has had diarrhea and vomiting and has done it all over the house.  I have been up all night taking care of my puppy."

BLOOD HURST & O'REARDON, LLP

- On October 27, 2014, another dog owner reported: "On Friday October 24, 2014, I purchased a Dynamic Femur Bone for my dog. Although I joyfully watched her enjoy the product, it was not less than 6 hours later that my dog became sick. She started vomiting throughout Friday night and all day Saturday. On Saturday night she suffered her first seizure. Saturday night she was also blessed to have bloody stools. On Sunday another seizure."

- On June 18, 2013, another dog owner reported: "My son brought home 3 of these bones, one for each dog. The two black labs ended up throwing them up, lots of bone fragments. However, our 5 year old golden retriever was not as lucky. They messed up her whole insides. After losing about 3 gallons of blood through the rectum and a $400 vet bill…"

- On April 1, 2013, another dog owner reported: "I bought this ham bone from Dollar General yesterday and gave it to my American bulldog (which is in a very good health). An hour later, he was vomiting pieces of the bone. That was all in his vomit. So the next morning, we went to check on him and he was laid over on his side—foaming, having convulsions, urinating on himself. He vomited on his bed and all over the ground in the garage and his eyes were opened in agony. We took him to the vet emergency hospital where he is there now and might not make it. We have to pay $564…"

- On February 1, 2012, another dog owner reported: "I recently purchased a Dynamic Ham Bone from the local Dollar General store for $3.00. I gave it to my dog Sunday night 1/29 and by the following morning, he was in pain. He was dripping blood from his bottom and constipated. I carried him to the vet and she tried to dislodge the bones. She did get them out but it was too late. My beloved pet was in such distress. She kept him overnight on an IV and some type hotplate to try and bring his temperature back up but he didn't pull through."

- On January 24, 2012, another dog owner reported: "On December 6, 2011, we gave our beloved Sadie a Dynamic Ham Bone. By morning she was very ill. By 6:30 pm, we were told by our vet that she died! Hours before she was running around playing, so excited that we got her a treat. Little did I know it would be her last!"

- On December 22, 2010, another dog owner reported: "We bought a couple of their ham bone treats for the dogs on Saturday, December 11. By Monday, December 13, my 4 year old chocolate labrador was dead and my 6 year old rottweiler was ill and in the hospital. We have all the information and facts from the Veterinarian. My $1500.00 labrador and great friend is dead and $1400.00 spent on veterinary bills for the rottweiler."

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

- On July 9, 2010, another dog owner reported: "On July 6 2010 I purchased a Dynamic Pet ham bone. On July 7th I found my dog, Jake (Pit Bull Terrier), dead in a pool of blood the next morning. I had no idea this bone was the case until my other dog was throwing up chards of bone."

- On March 6, 2009, another dog owner reported: "I bought a Real Ham Bone made by Dynamic Pet Products of Missouri from Walmart…Trace, my dog, enjoyed chewing on this bone. It did not splinter or anything, in fact there is quite a large piece of it still left. Then in the evening she started vomiting. She spent the next day at a veterinarian's office where she was diagnosed with a blockage of the colon. That night she endured a 4 hour surgery at Brandon Veterinary Specialists where the vet picked out small round pellets of the bone, up to the size of about a b-b. The next morning she was moved to Florida Veterinary Specialist critical care unit. Again in the evening she had another 2 hour surgery, because the blockage had caused poison in her body. She passed away at 4:30 the next afternoon…My vet bills were $14,000."

- On August 15, 2006, another dog owner reported: "Packaged dog ham bone lodged in my dogs intestines from inside his stomach [sic] to the length of his intestines. Chewed bone particles cemented together and prevented dog from excreting waste. Dog was vomiting and unable excrete waste though he tried. Two times in emergergency [sic] room for xrays & emimas.[sic]"

17.     In 2010, the FDA issued a statement against giving bones to dogs as chew toys. The FDA found that "[b]ones are unsafe no matter what their size. Giving your dog a bone may make your pet a candidate for a trip to your veterinarian's office later, possible emergency surgery, or even death." According to the 2010 FDA statement, the risks associated with giving bones to dogs include bone or splinters of bone becoming lodged in the esophagus or windpipe obstructing breathing, intestinal blockages and gastroenterological complications, bacterial infections, intestinal lacerations, and severe rectal bleeding. These injuries are so severe that they often require immediate and costly veterinarian care or emergency surgeries to attempt to prevent an agonizing and bloody death.

18.     Five years ago, based on consumer complaints it received, the Missouri Better Business Bureau specifically warned Defendants about the dangers posed by their Real Ham Bone For Dogs product. Defendants ignored this notice.

1

2   19.   After receiving reports from customers about the dangers of the Real

3   Ham Bone For Dogs, some retailers dropped the product from their inventory and

4   refused to sell them, squarely placing Defendants on notice of the dangers posed by

5   the Real Ham Bone For Dogs.

6   20.   As the manufacturer and distributor of the Real Ham Bone For Dogs,

7   Defendants nonetheless expressly and impliedly represented that their particular

8   product was safe and appropriate for dogs.   Further, as the suppliers and

9   manufacturers of Real Ham Bone For Dogs, Defendants are in a superior position to

10  investigate possible risks associated with the Real Ham Bone For Dogs.

11  21.   Despite having knowledge that Real Ham Bones For Dogs is inherently

12  dangerous for dogs, Defendants represent the opposite.  None of instructions on the

13  product's packaging or in other marketing informed Plaintiff or other consumers

14  that allowing dogs to chew on the Real Ham Bone For Dogs as instructed on the

15  labeling nonetheless poses a significant risk of serious illness or death.  Nowhere do

16  Defendants state the truth – that the Real Ham Bone For Dogs is a dangerous

17  product that should not be given to dogs.  Instead of properly warning consumers of

18  the true facts and removing it from store shelves, Defendants continue to falsely

19  represent that the Real Ham Bone For Dogs is "safe for your pet," while engaging in

20  a secret warranty program by paying off pet owners who persistently pursued their

21  complaint, offering them refunds or paying their vet bills to keep them quiet.

22  22.   As a result of Defendants' omissions and representations, Plaintiff and

23  the Class members purchased an inherently unsafe and dangerous product that is

24  other than as advertised and has caused many Class members, including Plaintiff, to

25  incur costly veterinarian bills and, tragically, to lose their pets.

26  23.   Defendants advertised the Real Ham Bone For Dogs as a safe product

27  and failed to warn consumers that the Real Ham Bone For Dogs may cause serious

28  bodily harm or death to their dogs.  Plaintiff and Class members purchased the Real

Ham Bone For Dogs reasonably believing that the product was safe for its intended purpose.

24.   The dangers presented by the Real Ham Bone For Dogs is a material fact.  The defect poses an unreasonable risk of harm to consumers' dogs and Plaintiff would not have purchased the product had she known that it was dangerous and could cause serious bodily harm or kill her dog.

25.   Defendants' omissions and misrepresentations were a material factor in influencing Plaintiff's decision to purchase the Real Ham Bone For Dogs and Defendants reaped, and continue to reap, large profits from their deceptive marketing and sale of Real Ham Bones For Dogs.

## CLASS DEFINITION AND ALLEGATIONS

26.   Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons who purchased one or more Real Ham Bone For Dogs other than for purpose of resale.

27.   Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors.

28.   Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.

29.   Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

    i.   Whether Defendants' Real Ham Bone For Dogs are unmerchantable because they present a danger and medical hazard when used in accordance with their label instructions;

BLOOD HURST & O'REARDON, LLP

ii.    Whether Defendants knew or should have known the Real Ham Bone
For Dogs cause harm to Class members and their dogs;

iii.   Whether Defendants knew or should have known that the Real Ham
Bone For Dogs are inherently dangerous and can cause serious injury
in the normal course of use;

iv.    Whether Defendants have a duty to inform Plaintiff and Class
members that the Real Ham Bone For Dogs may cause harm to Class
members and their dogs;

v.     Whether Defendants' omissions or representations concerning the
safety and appropriate uses of the Real Ham Bone For Dogs are likely
to deceive;

vi.    Whether Defendants' alleged conduct violates public policy;

vii.   Whether the alleged conduct constitutes violations of the laws asserted
herein;

viii.  Whether Defendants engage in false or deceptive advertising;

ix.    Whether Plaintiff and Class members have sustained monetary loss
and the proper measure of that loss;

x.     Whether Plaintiff and Class members are entitled to restitution,
disgorgement of Defendants' profits, declaratory or injunctive relief;
and

xi.    Whether Plaintiff and Class members are entitled to an award of
compensatory damages.

30.    The claims asserted by Plaintiff in this action are typical of the claims
of the members of the Class, as the claims arise from the same course of conduct by
Defendants, and the relief sought is common.

31.    Plaintiff will fairly and adequately represent and protect the interests of
the members of the Class.  Plaintiff has retained counsel competent and experienced

11

in both consumer protection and class litigation.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually.  It would thus be virtually impossible for the class, on an individual basis, to obtain effective redress for the wrongs done. Furthermore, even if class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33.    In the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final declaratory or injunctive relief with respect to the members of the Class as a whole appropriate.

34.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and to require that Defendants provide full restitution to Plaintiff and Class members.

35.    Unless a class is certified, Defendants will retain monies that were taken from Plaintiff and Class members as a result of Defendants' wrongful conduct.  Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be harmed and misled.

BLOOD HURST & O'REARDON, LLP

00083407

# COUNT I

## Violation of the Consumers Legal Remedies Act

## Cal. Civ. Code § 1750, *et seq.*

36.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

37.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act").  Plaintiff is a consumer as defined by California Civil Code § 1761(d).  The Real Ham Bone For Dogs is a "good" within the meaning of the Act.

38.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Real Ham Bone For Dogs:

(5)     Representing that goods or services have. . . approval, characteristics,. . . uses [or] benefits . . . which [they do] not have . . . .

\*     \*     \*

(7)     Representing that goods or services are of a particular standard, quality or grade. . . if [they are] of another.

\*     \*     \*

(9)     Advertising goods. . . with intent not to sell them as advertised.

\*     \*     \*

(16)   Representing that goods or services have been supplied in accordance with a previous representation when [they have] not.

39.     Defendants violated and continue to violate the Act by making the express and implied representations and by failing to disclose material facts as described above when they knew, or should have known, that the use of the Real Ham Bone For Dogs cause harm to Class members and their dogs.  Defendants further violated the Act by representing on the product packaging and other marketing material that the Real Ham Bone For Dogs is "safe for your pet" and is "meant to be chewed."

BLOOD HURST & O'REARDON, LLP

00083407

BLOOD HURST & O'REARDON, LLP

40.     Pursuant to § 1782(d) of the Act, Plaintiff and the Class seek a court order enjoining Defendants' above-described wrongful acts and practices and for restitution and disgorgement.

41.     Pursuant to § 1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  Copies of the letters are attached as Exhibit A.  If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this complaint to add claims for damages, as appropriate.

42.     Defendants' conduct is malicious, fraudulent and wanton.

43.     Pursuant to § 1780(d) of the Act, attached as Exhibit B is the affidavit providing that this action has been commenced in the proper forum.

## COUNT II

### Violations of Business & Professions Code § 17200, *et seq.*

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, omitting and/or misrepresenting material facts concerning the safety and integrity of the Real Ham Bone For Dogs, making representations (which also constitute advertising within the meaning of § 17200 and § 17500) as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) under the CLRA, Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law, including breach of implied warranty.  Defendants' above-described wrongful acts and practices constitute actual and constructive fraud within the meaning of Civil Code §§ 1572 and 1573, as well as deceit, which is prohibited under Civil Code §§ 1709 and 1711.

46.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

47.     Defendants' omissions, non-disclosures, acts, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business and Professions Code § 17200 *et seq.*, in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

48.     As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

49.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

50.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, are also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq.*

51.     Defendants' labeling and packaging as described herein, also constitutes unfair, deceptive, untrue and misleading advertising.

52.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.

53.     Plaintiff, on behalf of herself, and all other similarly situated Class members, seeks restitution of all money obtained from Plaintiff and the members of the Class as a result of Defendants' unfair competition, an injunction prohibiting

BLOOD HURST & O'REARDON, LLP

00083407

Defendants from continuing such practices, corrective advertising, and all other relief this court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT III

## Breach of Implied Warranty

54.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

55.     The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

56.     California has adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability.  Cal. Comm. Code § 2314.

57.     Defendants' Real Ham Bone For Dogs is a "good" as defined in the California commercial code governing the implied warranty of merchantability.

58.     As a designer, manufacturer, producer, marketer, and seller of the Real Ham Bone For Dogs, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

59.     By placing the Real Ham Bone For Dogs in the stream of commerce, Defendants impliedly warranted that the Real Ham Bone For Dogs is reasonably safe, effective and adequately tested for its intended use and that it is of merchantable quality.

60.     As merchants of the Real Ham Bone For Dogs, Defendants knew that purchasers relied upon them to manufacture, test and sell a product that is reasonably safe.  In fact, members of the public, including Plaintiff, reasonably relied upon Defendants' skill and judgment and upon said implied warranties in purchasing the Real Ham Bone For Dogs.

61.     Plaintiff and the Class members purchased the Real Ham Bone For Dogs to be used for its intended purpose.

BLOOD HURST & O'REARDON, LLP

62.    In breach of its implied warranty, the Real Ham Bone For Dogs is not safe and not merchantable because it is dangerous and may cause harm to Class members and their dogs.

63.    The Real Ham Bone For Dogs was not reasonably safe for its intended use when it left Defendants' control and entered the market.

64.    The Real Ham Bone For Dogs' dangers were not open or obvious to consumers, including Plaintiff and the Class, who could not have known about the nature of the risks associated with the Real Ham Bone For Dogs until after consumers gave the product to their dog.

65.    All conditions precedent to Defendants' liability under this contract, including notice, have been performed by Plaintiff and the Class.

66.    Defendants created the advertising at issue and warranted the Real Ham Bone For Dogs to consumers directly and/or through the doctrine of agency. Further, Defendants knew the identity, purpose and requirements of Plaintiff and members of the Class and manufactured the Real Ham Bone For Dogs to meet their requirements.

67.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and Class members have sustained injuries by purchasing the Real Ham Bone For Dogs.  Plaintiff and Class members are entitled to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for the Real Ham Bone For Dogs, disgorgement of profits that Defendants received from sales of the Real Ham Bone For Dogs, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

## COUNT IV

### Fraud

68.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

BLOOD HURST & O'REARDON, LLP

69.     Defendants have known for many years that the Real Ham Bone For Dogs was dangerous for dogs because it posed a significant risk of severe or deadly injury to dogs.  Defendants had actual knowledge of these risks at the time of sale to Plaintiff and Class members.

70.     As such, Defendants were under a duty and failed to discharge their duty to exercise reasonable care to not make misrepresentations about the product, including that this product was appropriate for dogs.  They also had a duty to disclose to Plaintiff and members of the Class the true facts about Real Ham Bone for Dogs.  As the manufacturer, marketer and distributor of Real Ham Bone For Dogs, Defendants had special knowledge of the hazards associated with the Real Ham Bone For Dogs, which was not reasonably available to Plaintiff and members of the Class.  Defendants made affirmative representations in violation of the applicable laws and actively concealed material facts relating to the dangerous nature of the Real Ham Bone For Dogs, knowing that Plaintiff and Class members would rely on the presumption that no such facts exist.

71.     By purchasing a product that was not as represented, Plaintiff and Class members did in fact rely upon Defendants' representations, including the product's packaging at the time they purchased the Real Ham Bone For Dogs.  Plaintiff and Class members justifiably relied on these representations to their detriment and/or were induced by Defendants' false statements and active concealment over the safety of the Real Ham Bone For Dogs, in part, because at no time did Plaintiff and Class members have the knowledge or expertise necessary to independently evaluate the safety of the product.

72.     Plaintiff and Class members could not have discovered Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading and unlawful activities.

73.   Defendants' misrepresentations, concealment, suppression and omissions were made in order to induce Plaintiff and Class members to purchase the Real Ham Bone For Dogs.  Plaintiff and Class members did just that and reasonably and justifiably relied upon the material misrepresentations and omissions made by Defendants when agreeing to purchase the product and permitting their dogs to chew on it.

74.   As a direct and proximate result of Defendants' false representations of material facts regarding the safety and efficacy of the Real Ham Bone For Dogs, dogs belonging to Plaintiff and Class members sustained severe and debilitating injuries and many died.  Plaintiff and Class members have suffered additional damages including, but not limited to, costs of medical care, rehabilitation, mental anguish and pain and suffering, for which they are entitled to compensatory damages.

75.   At all times relevant hereto, Defendants actually knew of the defective nature of the products as herein set forth and continued to manufacture, market and sell the products so as to maximize sales and profits at the expense of public health and safety, including the health and safety of dogs.  Defendants' conduct exhibits a wanton or reckless disregard and a want of care as to establish that their actions were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of foreseeable harm to Plaintiff and Class members, as well as their dogs.  Therefore, Plaintiff and Class members are entitled to punitive damages.

## COUNT V

### Negligent Misrepresentations

76.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

77.   Defendants owed Plaintiff and the Class a duty to exercise reasonable care in representing that the Real Ham Bone For Dogs was safe and appropriate for dogs.

Case No.
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00083407

78.     Defendants knew or should have known for many years that the Real Ham Bone For Dogs posed a serious risk of injury or death to dogs.  Despite this knowledge, Defendants misrepresented that the Real Ham Bone For Dogs was safe and appropriate for dogs.

79.     Defendants had superior knowledge and information regarding the risks associated with the Real Ham Bone For Dogs.  Plaintiff and Class Members did not have access to this information.

80.     Defendants' representation and omission concern issues material to the transaction in question.  Defendants intended for Plaintiff and the Class rely on its representations that the Real Ham Bone For Dogs was safe for use.  Had Plaintiff and the Class known that use of the Real Ham Bone For Dogs could result in serious injury or death to their dogs, they would not have purchased the product.

81.     The foregoing misrepresentations and practices proximately caused Plaintiff and the Class members to suffer damages in that they purchased the Real Ham Bone For Dogs without knowing that the alleged express and implied claims about the product were false.

82.     As a proximate cause of Defendant's false representations, Plaintiff and the Class members suffered injury to property, specifically in the illness and deaths of their pets and associated expenses, and continue to suffer damages.  Plaintiff seeks compensatory damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed class members damages, including punitive damages;

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

   D.   Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

   E.   Ordering Defendants to engage in a corrective advertising campaign;

   F.   Awarding attorneys' fees and costs; and

   G.   Providing such further relief as may be just and proper.

## JURY DEMAND

   Plaintiff demands a trial by jury on all issues so triable.


Dated: May 1, 2015                    BLOOD HURST & O'REARDON, LLP
                                      TIMOTHY G. BLOOD (149343)
                                      LESLIE E. HURST (178432)
                                      THOMAS J. O'REARDON II (247952)


                                      By:      *s/ Timothy G. Blood*
                                            TIMOTHY G. BLOOD

                                      701 B Street, Suite 1700
                                      San Diego, CA  92101
                                      Tel: 619/338-1100
                                      619/338-1101 (fax)
                                      tblood@bholaw.com
                                      lhurst&bholaw.com
                                      toreardon@bholaw.com

                                      *Attorneys for Plaintiff and the Class*