1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15

| | |
|---|---|
| KHRISTIE REED, on Behalf of Herself and All Others Similarly Situated, | CASE NO. 15cv0987-WQH-DHB |
| Plaintiff, | **ORDER** |
| vs. | |
| DYNAMIC PET PRODUCTS; and FRICK'S MEAT PRODUCTS, INC., | |
| Defendant. | |

HAYES, Judge:

16
17
18
19
20

        The matters before the Court are the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 8) and the motion to strike pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 9) filed by Defendants Dynamic Pet Products and Frick's Meat Products, Inc.

## I. Background

21
22
23
24
25
26
27

        On May 1, 2015, Plaintiff Khristie Reed commenced this action on behalf of herself and others similarly situated by filing the Class Action Complaint in this Court. (ECF No. 1).  On June 16, 2015, Defendants Dynamic Pet Products ("Dynamic") and Frick's Meat Products, Inc. ("Frick's") filed the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] and the motion to strike pursuant to Federal Rule of Civil Procedure 12(f).  (ECF Nos. 8, 9).  On July 6, 2015, Plaintiff filed oppositions to

28

        [1]  The motion to dismiss is accompanied by a request for judicial notice.  (ECF No. 8-3).

1  both motions. (ECF Nos. 11, 12). On July 13, 2015, Defendants filed replies in support

2  of both motions. (ECF Nos. 13, 14).

3  **II. Allegations of the Complaint**

4        This is a consumer protection class action arising out of
misrepresentations and omissions made by Defendant Dynamic Pet

5  Products and Frick's Meat Products, Inc. Frick's is a meat processor. In
an effort to profit from the waste resulting from the manufacture of its

6  products, Frick's or its principals created Dynamic to sell waste ham bones
to pet owners. Through Dynamic, a wholly owned subsidiary of Frick's,

7  Defendants manufacture, market and sell the Dynamic Pet Products Real
Ham Bone For Dogs, an 8" hickory-smoked pork femur, as an appropriate

8  and safe chew toy for dogs. Indeed, on each product label Defendants
clearly state that this is a "Dynamic Pet Products Real Ham Bone For

9  Dogs."

10  (ECF No. 1 at 2). "In an effort to profit from the waste resulting from the manufacture

11  of its products, Frick's knowingly and intentionally supplies Dynamic with bones for

12  the purpose of selling them as the Real Ham Bone For Dogs." *Id.* at 6. "Dynamic and

13  Frick's share the same ownership, management and headquarters and are the alter egos

14  of one another." *Id.* "Frick's and Dynamic work in concert with each other to profit

15  off the sale of waste ham bones, marketing them to pet owners as safe and appropriate

16  chew toys for dogs, when they are not." *Id.*

17        "The Real Ham Bone For Dogs is not appropriate for dogs and is not safe for its

18  intended purpose, despite Defendants' contrary representations." (ECF No. 1 at 2).

19  "When chewed, Real Ham Bones For Dogs are prone to splintering into shards, which

20  then slice through dogs' digestive systems. Thousands of dogs have suffered a terrible

21  array of illnesses, including stomach, intestinal and rectal bleeding, vomiting, diarrhea,

22  constipation and seizures, and have died gruesome, bloody deaths as a result of chewing

23  Defendants' Real Ham Bone For Dogs." *Id.*

24        The Complaint alleges that the Food and Drug Administration stated that bones

25  such as the Real Ham Bone For Dogs are not safe for dogs. The Complaint also alleges

26  that the Missouri Better Business Bureau "specifically warned Defendants about the

27  dangers posed by their Real Ham Bone For Dogs product[,]" but "Defendants ignored

28  this notice." *Id.* at 9. The Complaint quotes thirteen complaints made by pet owners

online or to Dynamic directly.  For example, the Complaint alleges that one pet owner complained that her dog suffered "shock and couldn't move ... puked and had Diarrhea and couldn't stand up ... [and] spent 3 days in the hospital on iv's [sic]...." as a result of ingesting the Real Ham Bone for Dogs.  *Id.* at 7.

"Despite having knowledge that Real Ham Bones For Dogs is inherently dangerous for dogs, Defendants represent the opposite."  *Id.* at 10.  "None of instructions [sic] on the product's packaging or in other marketing informed Plaintiff or other consumers that allowing dogs to chew on the Real Ham Bone For Dogs as instructed on the labeling nonetheless poses a significant risk of serious illness or death.  Nowhere do Defendants state the truth – that the Real Ham Bone For Dogs is a dangerous product that should not be given to dogs."  *Id.* at 10.  The Complaint alleges that the label of each Real Ham Bone For Dogs falsely represents that it is "safe for your pet" and is "meant to be chewed."  *Id.* at 3

The Complaint alleges that Plaintiff purchased the Real Ham Bone For Dogs from Wal-Mart in Oceanside, California, on March 1, 2015.

> When Plaintiff returned home from Wal-Mart, she gave the Real Ham Bone For Dogs to Fred, her healthy nine-year-old basset hound.  Plaintiff watched Fred chew on the Real Ham Bone For Dogs for approximately one hour, after which point Fred walked away and did not chew on it again.  The next day, Monday March 2, 2015, Fred was lethargic and vomiting blood.  Plaintiff immediately rushed Fred to California Veterinary Specialists in Carlsbad, California.  The veterinarian told Plaintiff that Fred was gravely ill and there was no guarantee that surgery would save him.  According to the veterinarian, the only way to alleviate Fred's suffering was to put him to sleep.  Plaintiff took the veterinarian's advice and Fred was euthanized that evening.

*Id.* at 5.

The Complaint defines the proposed class as "[a]ll persons who purchased one or more Real Ham Bone For Dogs other than for purpose of resale."  *Id.* at 11.  Attached to the Complaint as Exhibit A is a May 1, 2015 letter from Plaintiff's counsel to David S. Frick, owner of Dynamic Pet Products, requesting that "Defendants immediately correct and rectify these violations by ceasing dissemination of false and misleading information as described in the enclosed Complaint...."  (ECF No. 1-2 at 3).

The Complaint asserts the following claims for relief: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*; (2) violation of California Business and Professions Code section 17200, *et seq.* ("UCL"); (3) breach of implied warranty; (4) fraud; and (5) negligent misrepresentation.  Plaintiff requests general damages, punitive damages, restitution, disgorgement, declaratory and injunctive relief, corrective advertising; and attorneys' fees and costs.

**III.  Motion to Dismiss (ECF No. 8)**

Defendants move to dismiss Plaintiff's CLRA, UCL, fraud, and negligent misrepresentation claims for failure to allege fraud with the particularity required by Rule 9(b).  Defendants move to dismiss Plaintiff's CLRA and UCL claims on the ground that Defendants' alleged misrepresentations are not likely to deceive a reasonable consumer.  Defendants move to dismiss Plaintiff's CLRA claim for failure to comply with its 30-day notice requirement.  Defendants move to dismiss Plaintiff's proposed class, with respect to Plaintiff's CLRA, UCL, and implied warranty claims, to the extent the class includes members who reside outside of California.  Defendants move to dismiss Plaintiff's implied warranty claim on the ground that there is no vertical privity between Plaintiff and Defendants.  Defendants move to dismiss Plaintiff's declaratory and injunctive relief requests on the ground that Plaintiff lacks Article III standing to request declaratory and injunctive relief.

Plaintiff opposes the motion to dismiss and requests leave to amend should Defendants' motion be granted in any respect.

**A.  12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "A district court's dismissal for failure to state a

1  claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a

2  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

3  legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)

4  (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

5  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

6  requires more than labels and conclusions, and a formulaic recitation of the elements

7  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

8  (quoting Fed. R. Civ. P. 8(a)).  "To survive a motion to dismiss, a complaint must

9  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

10  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

11  550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

12  content that allows the court to draw the reasonable inference that the defendant is liable

13  for the misconduct alleged." *Id*. (citation omitted).  "[T]he tenet that a court must

14  accept as true all of the allegations contained in a complaint is inapplicable to legal

15  conclusions.  Threadbare recitals of the elements of a cause of action, supported by

16  mere conclusory statements, do not suffice." *Id*. (citation omitted).  "When there are

17  well-pleaded factual allegations, a court should assume their veracity and then

18  determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  "In

19  sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content,

20  and reasonable inferences from that content, must be plausibly suggestive of a claim

21  entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

22  2009) (quotations and citation omitted).

23  Claims sounding in fraud or mistake must additionally comply with the

24  heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which

25  requires that a complaint "must state with particularity the circumstances constituting

26  fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) "requires ... an account of the time,

27  place, and specific content of the false representations as well as the identities of the

28  parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

In a suit involving multiple defendants, "there is no absolute requirement that ... the complaint must identify *false statements* made by each and every defendant." *Swartz*, 476 F.3d at 764 (emphasis in original). "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (citation, internal quotations, and alterations omitted). "[A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (citation, internal quotations, and alterations omitted).

**B. Request for Judicial Notice (ECF No. 8-3)**

Defendants request judicial notice of the product label for the Real Ham Bone For Dogs as a document whose contents are discussed in the complaint. (ECF No. 8-3). The docket reflects that Plaintiff has not responded to Defendants' request for judicial notice.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... is generally known within the trial court's territorial jurisdiction; or ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 210(b). In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint by reference...." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d

1049, 1061 (9th Cir. 2008). Furthermore, courts may take judicial notice of documents
discussed in but not attached to a complaint, when the documents' authenticity is not
subject to dispute. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160-61 (9th Cir.
2012).

The Real Ham Bone For Dogs label is discussed in the Complaint. Plaintiff's
claims are based on representations made on the label and communications omitted
from the label. Plaintiff does not dispute the authenticity of the Real Ham Bone For
Dogs label. Defendants' request for judicial notice is granted. The Court takes judicial
notice of the Real Ham Bone For Dogs label for the purposes of this motion to dismiss:

**C. Compliance with Rule 9(b) (CLRA, UCL, Fraud, and Negligent**



1    Misrepresentation Claims)

2         Defendants contend that Plaintiff's CLRA, UCL, fraud, and negligent

3    misrepresentation claims must be dismissed because Plaintiff has failed to comply with

4    Rule 9(b).  Specifically, Defendants contend that Plaintiff has failed to specify which

5    Defendant is responsible for the alleged misrepresentation.  Defendants contend that

6    Plaintiff has not alleged that Frick's has made any misrepresentation at all.

7         Plaintiff contends that she has adequately alleged the role of each defendant in

8    the fraudulent scheme and need not identify false statements made by each defendant.

9    Plaintiff contends that Defendant Frick's may be liable for Defendant Dynamic's

10   misrepresentations under an alter ego theory.

11        The Complaint alleges that Dynamic and Frick's worked in concert as parent and

12   subsidiary entities in the marketing and selling the Real Ham Bone For Dogs.  Plaintiff

13   has adequately "identif[ied] the role of each defendant in the alleged fraudulent

14   scheme[,]" *Swartz*, 476 F.3d at 765, and the Court is able to draw the reasonable

15   inference that "Defendants" means Defendants Dynamic and Frick's, the only two

16   Defendants named in the Complaint, working in concert.  The Court concludes that the

17   allegations of each defendant's involvement are "specific enough to give defendants

18   notice of the particular misconduct which is alleged to constitute the fraud charged so

19   that they can defend against the charge and not just deny that they have done anything

20   wrong."  *Bly-Magee*, 236 F.3d at 1019.

21        Defendants' motion to dismiss Plaintiff's CLRA, UCL, fraud, and negligent

22   misrepresentation claims on the ground that Plaintiff has failed to comply with Rule

23   9(b) is denied.

24   **D.  Statements Likely to Deceive a Reasonable Consumer (UCL and**

25   **CLRA Claims)**

26        Defendants contend that "no reasonable consumer could have been deceived by

27   the label on the Real Ham Bone For Dogs."  (ECF No. 8-1 at 9).  "On the contrary, the

28   label specifically discloses the risks that Reed claims were omitted, and it advises the

1  customer how to minimize those risks." *Id.* at 10.  Defendant asserts that the label

2  "warns specifically that pet owners should not let their dog eat the bone, and to make

3  sure the bone does not splinter while it is being chewed." *Id.*  "It is hard to imagine

4  how this label could be part of an alleged scheme to defraud customers by hiding the

5  risk to their pets from these bones splintering." *Id.* at 10.

6      Plaintiff contends that "whether a representation is likely to deceive a reasonable

7  consumer in violation of the UCL and CLRA 'will usually be a question of fact not

8  appropriate for decision on demurrer.'" (ECF No. 11 at 12) (citing *Williams v. Gerber*

9  *Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) and *Cel-Tech Commc'ns, Inc. v. L.A.*

10 *Cellular Tel. Co.*, 20 Cal. 4th 163, 195 (1999)).  Plaintiff contends that Defendants

11 "miscast plaintiff's allegations." *Id.* at 14.  Plaintiff contends that the Complaint alleges

12 that "the Real Ham Bone for Dogs is not fit for its intended purpose." *Id.*  Plaintiff

13 contends that whether a reasonable consumer would be misled is a question of fact,

14 even when there are disclaimers on a product.

15     "[T]o state a claim under ... the UCL ..., based on false advertising or promotional

16 practices, it is necessary only to show that members of the public are likely to be

17 deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).  "[U]nless the

18 advertisement targets a particular disadvantaged or vulnerable group, it is judged by the

19 effect it would have on a reasonable consumer." *Lavie v. Procter & Gamble Co.*, 105

20 Cal. App. 4th 496, 506-07 (2003).  "[T]he standard applied in UCL and false

21 advertising cases is that of the ordinary consumer acting reasonably under the

22 circumstances." *Id.* at 498.  This "reasonable consumer" test applies to claims

23 advertising claims brought under the CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d

24 934, 938 (9th Cir. 2008).

25     Plaintiff alleges that the Real Ham Bone For Dogs is "not appropriate for dogs"

26 and "inherently dangerous for dogs." (ECF No. 1 at 2, 10).  The label advertises the

27 Real Ham Bone For Dogs as "Real Ham Bone *For Dogs.*" (ECF No. 8-2 at 5)

28 (emphasis added).  The label also contains the following language: "Bone is to be

chewed over several sittings, not eaten....  Not recommended for dogs with digestive problems or aggressive chewers.  Remove bone immediately if splintering occurs or small fragments break off." *Id.*  Accepting as true the allegation that the Real Ham Bone For Dogs is "not appropriate for dogs," it is a question of fact whether a reasonable consumer would be misled into believing that the Real Ham Bone For Dogs is appropriate for dogs after reading the label.

The Court does not conclude as a matter of law that the Real Ham Bone For Dogs label would not mislead a reasonable consumer.  Defendants' motion to dismiss Plaintiff's CLRA and UCL claims on the ground that no reasonable consumer would be misled by the Real Ham Bone For Dogs label is denied.

**E.  30-Day Notice Requirement (CLRA Claim)**

Defendants contend that the CLRA "requires a plaintiff to give the defendant notice of the alleged violations and provide an opportunity to cure, at least 30 days before commencing an action for damages."  (ECF No. 8-1 at 7).  Defendants contend that strict compliance with the notice requirement is required to state a claim under the CLRA.  Defendants contend that failure to comply with the notice requirement can never be cured, so dismissal with prejudice is required.  Defendants contend that Plaintiff has failed to comply with the notice requirement because the notice was sent on the same day the Complaint was filed, and the Complaint requests restitution and disgorgement, two types of damages.

Plaintiff asserts that she has complied with the notice requirements of the CLRA.  Plaintiff contends that she is only required to provide a pre-filing notice before seeking "legal damages."  (ECF No. 11 at 11).  Plaintiff contends that the Complaint only seeks equitable relief, restitution, and disgorgement, not "legal damages." *Id.*

The CLRA provides for the following remedies: (1) "[a]ctual damages"; (2) injunctive relief; (3) "[r]estitution of property"; (4) "[p]unitive damages"; and (5) "[a]ny other relief that the court deems proper."  Cal. Civ. Code § 1780(a).  Section 1782(a) of the CLRA provides a thirty-day pre-filing notice requirement for "an action for

damages." Cal. Civ. Code § 1782(a).  Sections 1782(b) and (c) provide that an "action

for damages" may not be maintained if the potential defendant takes certain corrective

action in response to the notice.  *Id.* §§ 1782(b), (c).  Section 1782(d) provides:

> An action for injunctive relief brought under the specific provisions of
> Section 1770 may be commenced without compliance with subdivision
> (a). Not less than 30 days after the commencement of an action for
> injunctive relief, and after compliance with subdivision (a), the consumer
> may amend his or her complaint without leave of court to include a request
> for damages. The appropriate provisions of subdivision (b) or (c) shall be
> applicable if the complaint for injunctive relief is amended to request
> damages.

*Id.* § 1782(d).

The Complaint alleges:

> Pursuant to § 1782(d) of the Act, Plaintiff and the Class seek a court
> order enjoining Defendants' above-described wrongful acts and practices
> for restitution and disgorgement.

> Pursuant to § 1782 of the Act, Plaintiff notified Defendants in writing
> by certified mail of the particular violations of § 1770 of the Act and
> demanded that Defendants rectify the problems associated with the actions
> detailed above and give notice to all affected consumers of Defendants'
> intent to so act.  Copies of the letters are attached as Exhibit A.  If
> Defendants fail to rectify or agree to rectify the problems associated with
> the actions detailed above and give notice to all affected consumers within
> 30 days of the date of the written notice pursuant to § 1782 of the Act,
> Plaintiff will amend this complaint to add claims for damages, as
> appropriate."

(ECF No. 1 at 15).  Because Plaintiff's pre-filing notice was sent to Defendants on the

same day that the Complaint was filed, Plaintiff's compliance with section 1782(a)

depends on whether Plaintiff's requests for restitution and disgorgement qualifies this

action as an "action for damages."  Cal. Civ. Code § 1782(a).

"There is some disagreement as to whether pre-suit notice is required when the

only monetary relief sought is restitution." *In re Ford Tailgate Litig.*, No. 11-CV-2953-

RS, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 11, 2014) (citations omitted).  This Court

agrees with the district courts that have held that Section 1782(a)'s pre-filing notice

requirement applies to requests for restitution and/or disgorgement.  *See Laster v.*

*T–Mobile USA, Inc.*, No. 5–1167, 2008 WL 5216255, at *17 (S.D. Cal. Aug. 11, 2008),

*aff'd sub nom.*, *Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd on*

*other grounds*, 131 S.Ct. 1740 (2011) ("To interpret Section 1782's notice requirement for "damages" to be limited to "actual damages" would render the word "actual" in Section 1780 redundant. In addition, if the Legislature intended Section 1782's reference to "damages" to include only "actual damages," it is unclear why it would specifically exempt only injunctive relief from the notice requirement in Section 1782(d)."); *Cuevas v. United Brands Co., Inc.*, No. 11cv991, 2012 WL 760403, at *4 (S.D. Cal. Mar. 8, 2012) (finding that a "claim for the equitable relief of disgorgement or restitution was still a claim for damages"). Accordingly, Plaintiff's requests for restitution and disgorgement pursuant to the CLRA are subject to dismissal.

The California Court of Appeal has held that a failure to comply with the CLRA's thirty-day notice requirement may be cured by amendment.

> [The CLRA's notice requirement] exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleded wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time. A dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements. If, before that 30-day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages.

*Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009) (emphasis in original) (citations omitted). This Court will follow *Morgan*. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) ("We are bound by pronouncements of the California Supreme Court on applicable state law, but in the absence of such pronouncements, we follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise."). Plaintiff's requests for restitution and disgorgement pursuant to the CLRA are dismissed without prejudice.

**E.  Class Members Outside of California (CLRA, UCL, and Implied Warranty Claims)**

Defendants move to dismiss Plaintiff's proposed class, with respect to Plaintiff's CLRA, UCL, and implied warranty claims, to the extent the class includes members who reside outside of California. Defendants contend that extraterritorial application of the CLRA, UCL, and California Consumer Code section 2314 (implied warranty) is unwarranted because "the Complaint fails to allege any conduct occurred in California, other than in connection with plaintiff's own purchase of the dog bone product." (ECF No. 8-1 at 13).

Plaintiff contends that extraterritorial application of California law involves a "fact intensive" choice-of-law analysis, "typically deferred until class certification." (ECF No. 11 at 17). Plaintiff contends that a choice-of-law analysis would be premature at this stage because there is no factual record in this case.

"However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (citation and internal quotations omitted). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Id.* (citation omitted). Plaintiff does not contend that the presumption does not apply to the CLRA or Section 2314. Accordingly, the Court will apply the presumption against extraterritorial application of California statutes to Plaintiff's CLRA and Section 2314 claims in addition to Plaintiff's UCL claim.

In *Sullivan*, a class of non-resident plaintiffs sought restitution from a California-based employer pursuant to the UCL "in the amount of overtime compensation due under the [Fair Labor Standards Act (29 U.S.C. § 207(a)) for weeks longer than 40 hours worked entirely in states other than California." *Sullivan*, 51 Cal. 4th at 1195. The non-resident plaintiffs alleged that their California-based employer improperly

1    categorized them as exempt from overtime requirements.  The Ninth Circuit Court of
2    Appeals requested that the California Supreme Court answer, *inter alia*, the following
3    certified question: "[D]oes [the UCL] apply to overtime work performed outside
4    California for a California-based employer by out-of-state plaintiffs in the
5    circumstances of this case if the employer failed to comply with the overtime provisions
6    of the FLSA?"  *Id.* at 1195 (internal quotations omitted).

7         The California Supreme Court first concluded that the "presumption against
8    extraterritoriality applies to the UCL in full force."  *Id.* at 1207.  Applying the
9    presumption, the court looked for "relevant conduct occurring in California...."  *Id.* at
10   1208.  Reasoning that it is not "unlawful in the abstract" for an employer to "adopt an
11   erroneous classification policy[,]" the court concluded that the employer's "decision to
12   classify its Instructors as exempt was made in California does not, standing alone,
13   justify applying the UCL to the nonresident plaintiffs' FLSA claims for overtime
14   worked in other states."  *Id.*  Reasoning that "the failure to pay legally required
15   overtime compensation certainly is an unlawful business act or practice for purposes of
16   the UCL[,]" the court noted that "the UCL might conceivably apply to plaintiffs' claims
17   if their wages were paid (or underpaid) in California...."  *Id.*  However, the stipulated
18   facts did "not speak to the location of payment."  *Id.*  The court concluded that the UCL
19   "does not apply to overtime work performed outside California for a California-based
20   employer by out-of-state plaintiffs in the circumstances of this case based solely on the
21   employer's failure to comply with the overtime provisions of the FLSA."  *Id.* at 1209.
22

23        In order to overcome the presumption against extraterritorial application of a
24   California statute, non-resident plaintiffs, who are not injured in California, must
25   establish that the unlawful conduct giving rise to their claims occurred in California.
26   *See id.* at 1208 n.10 (distinguishing prior cases permitting nationwide classes of
27   plaintiffs to sue under California law on the ground that "the unlawful conduct that
28   formed the basis of the out-of-state plaintiffs' claims .... occurred in California").

The Complaint alleges that Defendants are Missouri Corporations with their headquarters in Washington, Missouri.  The Complaint alleges that "Dynamic has marketed, distributed, and sold the Real Ham Bone For Dogs to many thousands of consumers in the United States through nationwide retailers such as Wal-Mart, Sam's Club, H.E.B., and Dollar General."  (ECF No. 1 at 5).  "Dynamic also sells the Real Ham Bone For Dogs directly to consumers nationwide through direct sales websites such as www.walmart.com and www.heb.com, and its own website, www.dynamicpet.net."  *Id.*  The Complaint alleges:

> Frick's Meat Products Inc. is a major meat product manufacturer and supplies sausages and other prepared meats to food retailers nationwide. As a nationwide distributor, Frick's generates considerable slaughter house waste, i.e., the bones and trimmings of a slaughtered animal that cannot be sold as meat or used in meat-products. In an effort to profit from the waste resulting from the manufacture of its products, Frick's knowingly and intentionally supplies Dynamic with bones for the purpose of selling them as the Real Ham Bone For Dogs. Dynamic and Frick's share the same ownership, management and headquarters and are the alter egos of one another. Frick's and Dynamic work in concert with each other to profit off the sale of waste ham bones, marketing them to pet owners as safe and appropriate chew toys for dogs, when they are not.

*Id.* at 6.  The Complaint alleges that Plaintiff purchased the Real Ham Bone For Dogs from Wal-Mart in Oceanside, California, that Fred, Plaintiff's basset hound, chewed on the Real Ham Bone For Dogs in Vista, California, and that Fred was euthanized in Carlsbad, California.

The Complaint alleges no facts plausibly demonstrating that non-California plaintiffs were injured in California or injured by unlawful conduct occurring in California.  Plaintiff's CLRA, UCL, and implied warranty claims are dismissed to the extent Plaintiff brings them on behalf of non-California residents.[2]

---

[2] A complex choice-of-law analysis, which might require delaying resolution of this issue to the class certification stage, is not required to reach this conclusion.  *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1086-87 (N.D. Cal. 2014) (stating that the plaintiffs "mistakenly conflate" the question of extraterritorial application of a California statute with the "choice of law inquiry often required at the class certification stage").  Because Plaintiff fails to plausibly allege that California law can be applied to the claims of non-California plaintiffs, and neither party advocates for application of an alternative state's laws, the Court is left with no laws to choose from at this stage in the proceedings.  Dismissal is therefore appropriate.

1

**F.  Vertical Privity (Implied Warranty Claim)**

2      Defendants move to dismiss Plaintiff's implied warranty claim on the ground that

3  there is no vertical privity between Plaintiff and Defendants because Plaintiff purchased

4  the Real Ham Bone For Dogs from Wal-Mart.  Plaintiff contends that an exception to

5  the vertical privity requirement applies in this case because Plaintiff is an intended

6  third-party beneficiary of the sale between Defendants and Wal-Mart.   Plaintiff

7  contends that another exception to the vertical privity requirement applies in this case

8  because the Real Ham Bone For Dogs is an "unknowingly dangerous" product.  (ECF

9  No. 11 at 21).

10      "Under California Commercial Code section 2314, ... a plaintiff asserting breach

11  of warranty claims must stand in vertical contractual privity with the defendant."

12  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation

13  omitted).  "A buyer and seller stand in privity if they are in adjoining links of the

14  distribution chain."  *Id.*  "Some particularized exceptions to the rule exist."  *Id.*

15      The Complaint alleges that Defendant Dynamic markets, distributes, and directly

16  sells the Real Ham Bone For Dogs.  The Complaint alleges that Defendant Frick's

17  supplies Dynamic with bones "for the purpose of selling them as the Real Ham Bone

18  For Dogs." (ECF No. 1 at 6).  The Complaint alleges that Plaintiff purchased the Real

19  Ham Bone For Dogs from Wal-Mart in Oceanside, California.  Plaintiff's third claim

20  asserts that Defendants violated California Commercial Code section 2314.

21      Because Plaintiff does not allege that she purchased the Real Ham Bone For

22  Dogs directly from either Defendant, Plaintiff must establish that an exception to the

23  vertical privity requirement applies.  Plaintiff contends that two exceptions apply: (1)

24  intended third-party beneficiary; and (2) unknowingly dangerous product.  Defendant

25  contends that neither the intended third-party beneficiary exception nor the

26  unknowingly dangerous product exceptions exist.

27              **i.  Intended Third-Party Beneficiary**

28      In *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978),

1   the plaintiff contracted for the construction of a bank records storage building.  The

2   plaintiff sued the subcontractor for breach of "an implied warranty for failure to furnish

3   proper materials and workmanship."  *Id.* at 69.  The court stated, "[u]nder the facts of

4   this case we do not need to decide the issue of privity, per se."  *Id.*  "Under Civil Code

5   section 1559 and the cases interpreting it, we conclude [the plaintiff] is a third-party

6   beneficiary of the contract between [the contractor] and [subcontractor] and therefore

7   can sue for breach of the implied warranty of fitness."  *Id.*  In so holding, the court

8   noted that "[s]ome jurisdictions use the third party beneficiary concept to find

9   'privity[,]'" but stated that "[w]e do not believe this fiction is necessary."  *Id.* at 70 n.5.

10  There do not appear to be any reported California cases extending *Gilbert* to the

11  consumer products context.  District courts are in disagreement on this issue.  *See In re*

12  *MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) (collecting

13  cases).

14       Assuming, without deciding, that a product purchaser may assert a claim under

15  Section 2314 against a product distributor on a third-party beneficiary theory, the

16  Complaint alleges no facts plausibly demonstrating that Plaintiff was the intended

17  beneficiary of any contracts between Wal-Mart and Defendants.

18                    **ii.  Unknowingly Dangerous Product**

19       In support of the unknowingly dangerous product exception, Plaintiff relies on

20  two California Court of Appeal cases: *Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987

21  (1964) and *Barth v. B.F. Goodrich Tire Co.*, 265 Cal. App. 2d 228 (1968).  *Barth* cites

22  *Alavarez* for the proposition that there is no privity requirement for implied warranty

23  claims where the product contains dangerous, latent defects, but *Barth* does not apply

24  this stated exception to the case.  *Alvarez*, in turn, cites *Peterson v. Lamb Rubber Co.*,

25  54 Cal. 2d 339 (1960) for this same broad proposition.  However, *Peterson* did not

26  create such a broad exception.  In *Peterson*, the California Supreme Court held that an

27  employee may "stand in the shoes of the employer" when the employer purchases a

28  dangerous product directly from the manufacturer.  *Id.* at 347-48; *see also Windham at*

1   *Carmel Mountain Ranch Assn. v. Superior Court*, 109 Cal. App. 4th 1162, 1169 (2003)

2   ("[A]n expansion of the privity concept has been established for certain employees who

3   are injured while using dangerous products *purchased by their employers*.") (emphasis

4   added) (citing *Peterson*, 54 Cal. 2d at 347-48).

5         The Court concludes that the California courts have not created a general

6   exception to Section 2314's privity requirement for unknowingly dangerous products.

7   *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008)

8   ("California courts have painstakingly established the scope of the privity requirement

9   under California Commercial Code section 2314, and a federal court sitting in diversity

10  is not free to create new exceptions to it."). Plaintiff's implied warranty claim is

11  dismissed without prejudice.

12        **G.  Injunctive and Declaratory Relief**

13        Defendants move to dismiss Plaintiff's requests for injunctive and declaratory

14  relief on the ground that Plaintiff lacks standing under Article III of the United States

15  Constitution.  Defendants contend that Plaintiff "cannot establish that she realistically

16  is threatened by a repetition of the alleged misconduct...."  (ECF No. 8-1 at 15).

17  Defendants contend that Plaintiff "undisputedly is now aware of defendants' conduct

18  that she claims constitutes misrepresentations and omissions, and she is aware of the

19  alleged danger posed by he Real Ham Bone for Dogs product."  *Id.*

20        Plaintiff contends that she can establish a realistic threat of future injury because

21  Defendants may cure the alleged misrepresentations or the Real Ham Bone For Dogs'

22  defects in the future.   Plaintiff contends that if Defendants cure the alleged

23  misrepresentations or the Real Ham Bone For Dogs without a court order, she will be

24  injured because she will suspect continuing misrepresentations and probably will not

25  purchase the Real Ham Bone For Dogs.  Conversely, "Plaintiff attests she would

26  consider purchasing a Dynamic product as a chew toy for her dog, if the product was

27  reconstituted to be safe and she felt confident the labeling and/or representations of

28  safety were accurate."  (ECF No. 11 at 23).  Plaintiff contends that the only way she

1   will be confident that the Real Ham Bone For Dogs is safe and that its label is accurate

2   is if injunctive relief is granted.  Plaintiff submits a declaration stating:

3           I have not purchased a Real Ham Bone for Dogs since my dog died
        after chewing on a Real Ham Bone for Dogs.  However, if the product was
4       reconstituted into an appropriate and safe chew toy for dogs and if I felt
        assured the reconstituted product was honestly labeled so I could make an
5       informed decision, I would consider purchasing the product again,
        provided it was safe and appropriate for dogs.

6   (ECF No. 11-1 at 2).[3]

7           "Federal courts are courts of limited jurisdiction.  They possess only that power

8   authorized by Constitution and statute, which is not to be expanded by judicial decree.

9   It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

10  establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v.*

11  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  The party

12  invoking federal jurisdiction bears the burden of establishing Article III standing. *Lujan*

13  *v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  This party must establish (1) an

14  "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and

15  particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) a

16  causal connection between the injury and the conduct complained of, and (3) a

17  likelihood that the injury will be redressed by a favorable decision.  *Id.* at 560-61

18  (citations omitted).  For claims for "declaratory and injunctive relief," the plaintiff must

19  demonstrate that he or she is "realistically threatened by a *repetition* of the violation."

20  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (emphasis in original) (citations

21  and quotation marks omitted).  "[A] plaintiff must demonstrate standing for each claim

22

23  _____

24      [3]  Plaintiff contends that she may introduce evidence because Defendant attacks
    the Court's jurisdiction.  "A Rule 12(b)(1) jurisdictional attack may be facial or
    factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a
25  factual attack, "[o]nce the moving party has converted the motion to dismiss into a
    factual motion by presenting affidavits or other evidence properly brought before the
26  court, the party opposing the motion must furnish affidavits or other evidence necessary
    to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale*
27  *Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Defendants have not
    introduced evidence disputing the Court's jurisdiction.  Defendants do not bring a
28  factual attack.  Accordingly, Plaintiff may not introduce evidence, and the Court will
    not consider Plaintiff's declaration.

1  he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  In the
2  absence of a plaintiff's Article III standing, a court lacks subject matter jurisdiction to
3  entertain the lawsuit.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-110
4  (1998).

5        "When ... the plaintiff defends against a motion to dismiss at the pleading stage,
6  general factual allegations of injury resulting from the defendant's conduct may suffice
7  because we presume that general allegations embrace those specific facts that are
8  necessary to support the claim." *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th
9  Cir. 2009) (citations and internal quotations omitted); *see also Carrico v. City and Cnty.*
10  *of S.F.*, 656 F.3d 1002, 1006 (9th Cir. 2011) (noting that, at the pleading stage, standing
11  analysis is based "on the allegations of the ... complaint, which we accept as true").
12  However, a complaint must allege a "plausible injury in fact" in order to establish
13  Article III standing. *Id.* at 1007.

14        The Complaint requests an injunction that prevents Defendants from continuing
15  to market the Real Ham Bone For Dogs as a bone that is safe for dogs.  The Complaint
16  alleges no facts showing that Plaintiff is "realistically threatened by a *repetition* of the
17  violation...." *Gest*, 443 F.3d at 1181.  Plaintiff's requests for injunctive and declaratory
18  relief are dismissed without prejudice.

19  **IV.  Motion to Strike (ECF No. 9)**

20        Defendants move to strike non-California residents from Plaintiff's proposed
21  nationwide class with respect to Plaintiff's UCL, CLRA, and implied warranty claims
22  and to strike Plaintiff's request for injunctive and declaratory relief.  Defendants raise
23  the same contentions that they raised in requesting dismissal of these claims.

24        Because the Court granted Defendants' motion to dismiss Plaintiff's UCL,
25  CLRA, and implied warranty claims to the extent that they are brought on behalf of
26  non-California residents and Plaintiff's requests for declaratory and injunctive relief,
27  Defendants' motion to strike is denied as moot.

28  **V.  Conclusion**

IT IS HEREBY ORDERED that Defendants' motion to dismiss (ECF No. 8) is GRANTED as follows:

1. Plaintiff's requests for restitution and disgorgement pursuant to the CLRA are DISMISSED without prejudice;

2. Plaintiff's CLRA, UCL, and implied warranty claims are DISMISSED without prejudice to the extent Plaintiff brings them on behalf of non-California residents;

3. Plaintiff's implied warranty claim is DISMISSED without prejudice; and

4. Plaintiff's requests for injunctive and declaratory relief are DISMISSED without prejudice.

Defendants' motion to dismiss (ECF No. 8) is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants' motion to strike (ECF No. 9) is DENIED AS MOOT.

No later than thirty (30) days from the date of this Order, Plaintiff may file a motion for leave to amend the Complaint, accompanied by a proposed first amended complaint.

DATED: July 30, 2015

**WILLIAM Q. HAYES**
United States District Judge