FILED

JUL 21 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY \_\_\_\_MYN\_\_\_\_ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHRISTIE REED, PAUL BENESCH, REBECCA BRANDEL, DIANE CANUTT, ROD CANUTT, CRYSTAL LEWIS, RENE LUCHT, DIANE ORTMAN, DEBRA PORWOLL, and KRIS VOSBURGH on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br>DYNAMIC PET PRODUCTS; and FRICK'S MEAT PRODUCTS, INC.,<br>Defendant. | CASE NO. 15cv0987-WQH-DHB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 40) filed by Defendants Dynamic Pet Products and Frick's Meat Products, Inc.

**I. Background**

On May 1, 2015, Plaintiff Khristie Reed commenced this action on behalf of herself and others similarly situated by filing the Class Action Complaint in this Court. (ECF No. 1). On June 16, 2015, Defendants Dynamic Pet Products ("Dynamic") and Frick's Meat Products, Inc. ("Frick's") filed a motion to dismiss and a motion to strike. (ECF Nos. 8, 9). On July 30, 2015, the Court granted Defendants' motion in part and denied it in part. (ECF No. 18).

1    On January 15, 2016, Plaintiffs filed a first amended complaint. On January 26, 2016, Plaintiffs filed a second amended complaint ("SAC"), which is the operative complaint. (ECF No. 37). Plaintiffs plead causes of action for: (1) fraud; (2) negligent misrepresentation; (3) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*; (4) violation of California Business and Professions Code section 17200, *et seq.* ("UCL"); (5) breach of implied warranty; (6) violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute § 501.201, *et seq.*; (7) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; (8) violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statute § 51:1401, *et seq.*; (9) violation of the Minnesota Consumer Protection Act, Minnesota Statute §§ 325F.67 *et seq.*; (10) violation of the New York Consumer Protection from Deceptive Practices Act, New York General Business Law § 349, *et seq.*; (11) violation of the North Carolina Consumer Protection Act, North Carolina General Statute § 75-1.1, *et seq.*; (12) violation of the Oregon Unlawful Trade Practices Act, Oregon Revised Statute §§ 646.605 *et seq.*; and (13) violation of the Washington Consumer Protection Act, Washington Revised Code §§ 19.86.010, *et seq.* Plaintiffs request general damages, punitive damages, restitution, disgorgement, equitable relief, and attorneys' fees and costs.

On February 9, 2016, Defendants filed the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40). On February 29, 2016, Plaintiffs filed a response in opposition. (ECF No. 43). On March 7, 2016, Defendants filed a reply. (ECF No. 44).

**II. Allegations of the Complaint**

> This is a consumer protection class action arising out of misrepresentations and omissions made by Defendants Dynamic Pet Products, LLC and Frick's Meat Products, Inc. regarding the Real Ham Bone For Dogs. Frick's is a meat product manufacturer. In an effort to profit from the waste produced by slaughterhouses and meat manufacturers, Frick's or its principals created Dynamic to sell waste ham bones to pet owners. Through Dynamic, a wholly owned subsidiary of

> Frick's, Defendants manufacture, market and sell the Real Ham Bone For Dogs as an appropriate and safe chew toy for dogs. Indeed, on each product label and as the name suggests, Defendants explicitly market the Dynamic Real Ham Bone For Dogs as a chew toy for dogs.

(ECF No. 37 ¶ 1). "To profit from the waste resulting from the manufacture of its products, Frick's, or its principals, created Dynamic to sell waste pig bones to pet owners, marketing them as appropriate and safe for dogs." *Id.* ¶ 22. Defendants Frick's Meat Products, Inc. and Dynamic Pet Products are Missouri Corporations. *Id.* ¶¶ 19, 20. "Dynamic and Frick's are the alter egos of one another and operate as a single business enterprise for the production, marketing and sale of the Real Ham Bone For Dogs." *Id.* ¶ 21. "Dynamic and Frick's share the same ownership, management and headquarters." *Id.* "Frick's and Dynamic work in concert with each other to profit from the sale of waste ham bones by marketing them to pet owners as safe and appropriate chew toys for dogs, when they are not." *Id.*

"The Real Ham Bone For Dogs is not a safe or appropriate chew toy for dogs, and is not fit for its intended purpose, despite Defendants' contrary representations." *Id.* ¶ 2. "The Real Ham Bone For Dogs is an 8" hickory-smoked pig femur, which when chewed is prone to splintering into shards. When swallowed, these shards slice through dogs' digestive systems and cause severe internal injuries. Thousands of dogs have suffered a terrible array of illnesses, including stomach, intestinal and rectal bleeding, vomiting, diarrhea, constipation and seizures, and have died gruesome, bloody deaths as a result of chewing Defendants' Real Ham Bone For Dogs." *Id.*

The Complaint alleges that the Food and Drug Administration stated that bones such as the Real Ham Bone For Dogs are not safe for dogs. The Complaint alleges that the Missouri Better Business Bureau "issued a warning to Defendants about the dangers posed by their Real Ham Bone For Dogs product" but "Defendants ignored this notice." *Id.* at 52. The Complaint quotes fifteen complaints made by pet owners online or to Dynamic directly. For example, the Complaint alleges that one pet owner complained that her dog suffered "shock and couldn't move . . . puked and had Diarrhea and couldn't stand up . . . [and] spent 3 days in the hospital on iv's [sic]" as

a result of ingesting the Real Ham Bone for Dogs. *Id.* ¶ 51.

"Despite having knowledge that Real Ham Bones For Dogs is inherently dangerous for dogs, Defendants represent the opposite." *Id.* ¶ 57. "None of the instructions on the product's packaging or in other marketing informed Plaintiffs or other consumers that allowing dogs to chew on the Real Ham Bone For Dogs as instructed on the labeling would pose a significant risk of serious illness or death." *Id.* ¶ 58. "Nowhere do Defendants state the truth – that the Real Ham Bone For Dogs is a dangerous product that should not be given to dogs." *Id.* The Complaint alleges that the label of each Real Ham Bone For Dogs misrepresents that it is "safe for your pet" and is "meant to be chewed." *Id.* ¶ 5.

The Complaint alleges that Plaintiff Khristie Reed purchased the Real Ham Bone For Dogs from Wal-Mart in Oceanside, California, on March 1, 2015.

> When Plaintiff returned home from Wal-Mart, she gave the Real Ham Bone For Dogs to Fred, her healthy nine-year-old basset hound. Plaintiff watched Fred chew on the Real Ham Bone For Dogs for approximately one hour, after which point Fred walked away and did not chew on it again. The next day, Monday March 2, 2015, Fred was lethargic and vomiting blood. Plaintiff immediately rushed Fred to California Veterinary Specialists in Carlsbad, California. The veterinarian told Plaintiff that Fred was gravely ill and there was no guarantee that surgery would save him. According to the veterinarian, the only way to alleviate Fred's suffering was to put him to sleep. Plaintiff took the veterinarian's advice and Fred was euthanized that evening.

*Id.* ¶ 26.[1]

The Complaint defines the proposed class as "[a]ll persons who purchased one or more Real Ham Bone For Dogs other than for purpose of resale." *Id.* ¶ 61. Attached to the Complaint as Exhibit A is a May 1, 2015 letter from Plaintiffs' counsel to David S. Frick, owner of Dynamic Pet Products, requesting that "Defendants immediately correct and rectify these violations by ceasing dissemination of false and misleading information as described in the enclosed Complaint . . . ." (ECF No. 37-1 at 3).

---

[1] The Complaint contains the experiences of the other nine Plaintiffs who allege their dogs became seriously ill and, in some cases, died after consuming Real Ham Bone For Dogs product.

### III. Discussion

Defendants contend the Court should dismiss: (1) Plaintiffs' implied warranty claim on the ground that there is no vertical privity between Plaintiff and Defendants; (2) Plaintiff Benesch's Louisiana consumer protection claim because the Louisiana consumer protection statute prohibits class action claims; (3) all of Plaintiffs' claims relating to the risk of splintering because the product label contained an express waiver of liability and assumption of risk that the bone would splinter; (4) Plaintiffs' misrepresentation claims based on Dynamic's website and other "unnamed marketing" because the allegations are vague and conclusory; (5) Plaintiff Brandel's Florida consumer protection claims because Brandel cannot establish causation for her claim and the Florida statute excludes claims for damage to property; (6) Plaintiff Rodney Cannut's claim because he did not read the label or purchase the bone; and (7) Plaintiffs' SAC because it fails to identify which remedies are sought under each separate cause of action.

Plaintiffs oppose the motion to dismiss and requests leave to amend should Defendants' motion be granted in any respect.

### A. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

### B. Request for Judicial Notice (ECF No. 40-7)

Defendants request judicial notice of three product labels for the Real Ham Bone For Dogs as documents whose contents are discussed in the complaint. (ECF No. 40-7). The first label, Exhibit A, is from "prior to approximately May 1, 2015." *Id.* at 1. The second label, Exhibit B, is from approximately May 1, 2015 to approximately June 8, 2015. The third label, Exhibit C, is from approximately June 8, 2015 to the present. The docket reflects that Plaintiffs have not responded to Defendants' request for judicial notice.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Enid. 210(b).

1  In ruling on a motion to dismiss, a court may consider "materials incorporated into the
2  complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d
3  1049, 1061 (9th Cir. 2008). Furthermore, courts may take judicial notice of documents
4  discussed in but not attached to a complaint, when the documents' authenticity is not
5  subject to dispute. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160-61 (9th Cir.
6  2012).

The Real Ham Bone For Dogs label is discussed in the Complaint. Plaintiffs' claims are based on representations made on the label and communications omitted from the label. Plaintiff does not dispute the authenticity of the Real Ham Bone For Dogs label. Defendants' request for judicial notice is granted. The Court takes judicial notice of the Real Ham Bone For Dogs labels for the purposes of this motion to dismiss:



**Exhibit A**

/ / /
/ / /
/ / /
/ / /



**Exhibit B**



**Exhibit C**

### C. Implied Warranty Claim

Defendants move to dismiss Plaintiff Reed's implied warranty claim on the ground that there is no vertical privity between Plaintiff Reed and Defendants because Plaintiff purchased the Real Ham Bone For Dogs from Wal-Mart. Plaintiff Reed "does

not oppose the motion to dismiss her cause of action for breach of implied warrant." (ECF No. 43 at 7 n.1). Defendants' motion to dismiss count five for breach of implied warranty is granted.

**D. Waiver of Liability and Assumption of Risk**

Defendants contend that Plaintiffs' claims related to the risk of splintering must be dismissed because the label on the Real Ham Bone For Dogs contained a waiver of liability and assumption of risk. (ECF No. 40-1 at 20). Defendants contend that Plaintiffs alleged that they read the label and none of the Plaintiffs alleged that they failed to understand the label. (ECF No. 44 at 10). Defendants contend that "[i]t is obvious that swallowing bone splinters would be . . . dangerous, and could result in injury or death." *Id.* at 11.

Plaintiffs contend that they did not waive their claims and assume the risk of the dog bones splintering because the disclaimer did not warn that the dog bone could severely injury or kill dogs. (ECF No. 43 at 23). Plaintiffs assert that the disclaimer was written in "about 7 point font [and] was added to the label in the latter half of 2014." *Id.* Plaintiffs contend that disclaimers of liability do not apply in cases of fraud or willful or gross negligence. Plaintiffs contend that even if the disclaimer were valid, Defendants did not disclaim liability for deceptive advertising. Plaintiffs contend that this type of waiver, when applied to consumer protection claims, is unenforceable as a matter of statute.

"An agreement which purports to release, indemnify or exculpate the party who prepared it from liability for that party's own negligence or tortious conduct must be clear, explicit and comprehensible in each of its essential details." *Ferrell v. S. Nevada Off-Rd. Enthusiasts, Ltd.*, 195 Cal. Rptr. 90, 95 (Ct. App. 1983).

The label on the Real Ham Bone For Dogs states:

> Supervise your pet while enjoying any natural bone product. Bone is to be chewed over several sittings, not eaten. Always provide a fresh supply of water to pet. Not recommended for dogs with digestive problems or aggressive chewers. Remove bone immediately if splintering occurs or small fragments break off. Recommended size is slightly larger than your

pet's mouth. Pet owner assumes liability associated with the use of this or any natural bone product.

*See* Exhibits 1-3. In their SAC, Plaintiffs allege that they "read the label for the Real Ham Bone For Dogs." *See* ECF No. 37 ¶¶ 25, 27, 30, 33, 39, 42, 48. However, Plaintiffs allege that they were not aware that the dog bone could injure or kill their pets. *Id.* The label does not reference the risk of severe injury or death to dogs with use of the product. The Court finds that it is not "clear, explicit and comprehensible" that giving a Real Ham Bone For Dogs to a dog could result in injury or death. Defendants motion to dismiss Plaintiffs' claims related to the risk of splintering on the grounds that there was a waiver of liability and assumption of risk on the label is denied.

### E. Louisiana's Consumer Protection Statute

Plaintiffs assert claims under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), which states,

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but *not in a representative capacity* to recover actual damages.

La. Stat. Ann. § 51:1409 (emphasis added). Although Plaintiffs agree that the LUTPA bars class action, they maintain that the limitation is procedural and that application of Rule 23 would not modify any substantive rights under the LUTPA. Citing to *Shady Grove v. Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), Defendants contend that Plaintiffs cannot bring a class action under the LUTPA in federal district court because the state statute bans class actions. Relying on Justice Stevens' concurring opinion in *Shady Grove*, Defendants contend that the ban on class actions in the LUTPA is substantive and that application of Rule 23 would violate the Rules Enabling Act, which provides that rules of procedure "shall not abridge, enlarge, or modify a substantive right," 28 U.S.C. § 2072(b). Defendants contend that

"[b]ecause the ban on class action is contained within LUTPA itself, and because it only applies to claims brought under LUTPA," the state law limitation is a substantive right and is not preempted by Rule 23. Plaintiffs reply that Justice Stevens' opinion is not controlling and cite to district court decisions that held that Rule 23 class actions may be maintained under the LUTPA.

"In *Shady Grove*, the different opinions of the fractured Court took contrasting approaches to determining whether a New York statute prohibiting class actions in suits seeking penalties or statutory minimum damages precluded a federal district court sitting in diversity from entertaining a class action under Rule 23." *In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014). In *In re Hydroxycut*, the district court considered the same arguments raised in this case for several state statutes, including the LUTPA. *Id.* at 652. The court explained,

> Whether the state statutory provisions that prohibit class actions for unfair or deceptive practices are "procedural" or "substantive," is a difficult question with no clear answer. However, the Court tends to view these limitations on class actions as procedural in nature. In *Shady Grove*, Justice Scalia explained:
>
> > A class action no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of separate suits. And like traditional joinder it leaves the parties' legal rights and duties intact and the rules of decision unchanged.
>
> *Shady Grove*, 559 U.S. at 408, 130 S.Ct. 1431. Conversely, a rule barring class actions does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit. The substantive rights of these individuals are not affected. The prohibitions against class actions only affect "how the claims are processed." *Id.* The fact that the class action prohibitions are within the individual state consumer protection acts, as opposed to free-standing rules, does not alter the Court's conclusion. Accordingly, application of Rule 23 to Plaintiffs' claims does not run afoul of the Rules Enabling Act.

*Id.* at 654. Several other courts within this circuit have reached the same conclusion. *See e.g., In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL

4955377, at *21 (N.D. Cal. Oct. 2, 2014) (finding that the class-action bans challenged were "procedural, not substantive, and that application of Rule 23 to them would not modify any substantive right"); *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) (similar); *Johnson v. Ashley Furniture Indus., Inc.*, No. 13-CV-2445-BTM-DHB, 2014 WL 6892173 (S.D. Cal. Nov. 4, 2014) (similar). The Court finds the *In re Hydroxycut* decision persuasive and concludes that the class action ban in the LUTPA is procedural, not substantive, and that "application of Rule 23 to Plaintiffs' claims does not run afoul of the Rules Enabling Act." 299 F.R.D. at 654. Plaintiffs' claims are not subject to dismissal based on the LUPTA. The Court concludes that Defendants' motion to dismiss Plaintiffs' claim is denied.

**F. The Phrase "Website and Other Marketing" and Rule 9(b)**

Defendants contend that "Plaintiffs' allegations regarding Dynamic's website and 'other marketing' must be dismissed" because Plaintiff has failed to comply with Rule 9(b). Plaintiffs contend that Defendants' "request to parse out the phrase 'website and other marketing' is a Rule 12(f) motion to strike, not a 12(b)(6) motion to dismiss." (ECF No. 43 at 19). Plaintiffs contend that "[n]o claim will fail if the phrase attacked by defendants is stricken." *Id.* at n 3. Plaintiffs contend that the phrase "website and other marketing" does not need to meet the Rule 9(b) requirements in insolation.

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply

with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

The SAC alleges that Defendants "expressly and impliedly represented and continue to represent on the product label and on Dynamic's website and other marketing that the Real Ham Bone For Dogs is 'safe for your pet' and is 'meant to be chewed.'" (ECF No. 37 ¶ 5). Defendants correctly assert that the SAC does not allege that Plaintiffs saw Dynamic's website and other marketing. However, Plaintiffs allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee*, 236 F.3d at 1019. The Court finds that the allegations in the SAC satisfy Rule 9(b). Defendants' motion to dismiss claims based on fraud is denied.

### F. Plaintiff Brandel's Claim

Defendants contend that Plaintiff Brandel cannot bring a claim for property damages under the Florida Deceptive and Unfair Trade Practices Act because the Florida statute excludes damage to property. (ECF No. 40-1 at 22). Defendants also contend that Brandel cannot establish causation because the SAC alleges that the bone "appeared intact and showed no signs of splintering." (ECF No. 40-1 at 22).

Plaintiffs contend that Brandel seeks recovery for loss of money, not for property damage to her dog. (ECF No. 43 at 20). Plaintiffs contend that Brandel has adequately alleged causation under the statute because Brandel alleged that the deceptive advertising caused damages.

Under the Florida Deceptive and Unfair Trade Practices Act, a plaintiff cannot make a claim "for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. Ann. § 501.212.

To bring a claim under the Act, a consumer "must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act."

In the SAC, Plaintiff Brandel alleges that she "read the label of the Real Ham Bone For Dogs" and that the label "stated expressly and impliedly that the Real Ham Bone For Dogs was meant for dogs and was safe for dogs to chew on." (ECF No. 37 ¶ 30). Plaintiff Brandel alleges, "In reliance on the express and implied representations, unaware of the material omitted facts, and based on her reasonable expectation that it was safe for her dog, Ms. Brandel purchased the Real Ham Bone For Dogs." Id. Plaintiff Brandel alleges that she purchased an "unsafe product that she reasonably believed to be safe." Id. ¶ 32. Plaintiff Brandel alleges that she "suffered injury in fact and lost money and property." Id. ¶ 32. The Court concludes that Plaintiffs have alleged a cause of action under the Florida Deceptive and Unfair Trade Practices Act. To the extent that Plaintiff Brandel seeks property damages, such a recovery may be precluded by the Florida statute. See Fla. Stat. Ann. § 501.212 (a plaintiff cannot make a claim "for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction."). Defendants motion to dismiss Plaintiff Brandel's claim is denied.

**G. Plaintiff Rodney Canutt's Claim**

Defendants contend that Rodney Canutt does not have a viable claim under the Oregon's Unlawful Trade Practices Act because Canutt alleges that his wife read the label and purchased the bone, not him. (ECF No. 40-1 at 22).

Plaintiffs contend that Canutt has properly pled a cause of action because the Oregon Act does not require reliance when the allegations include omissions. (ECF No. 43 at 21). Plaintiffs contend that the SAC alleges "a combination of false statements, half-truths and omissions." Id. at 22. Plaintiffs contend that "[a]s a result of defendants' unlawful business practice, Mr. Canutt gave the bone to his dog Teddy and Teddy died, meaning Mr. Canutt suffered an ascertainable loss of property." Id.

ORS 646.638(1) provides:

> [A]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper.

To prevail under ORS 646.638(1) "(1) a plaintiff must prove: (1) a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')." *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1047 (Or. Ct. App. 2000). To state a claim, a plaintiff "must suffer a loss of money or property that was *caused by* the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015). "Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved and the loss allegedly caused by it." *Id.* (citing to *Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977) ("Whether ORS 646.638(1) requires reliance as an element of causation necessarily depends on the particular unlawful practice alleged."). Reliance is required, for example, "when plaintiff claims to have acted upon a seller's express representations." *Id.*

In this case, the SAC alleges that the Real Ham Bone for Dogs was advertised expressly and impliedly as "safe for your pet" and "meant to be chewed." (ECF No. 37 ¶ 23). The SAC alleges, that Ms. Canutt, not Rodney Canutt, read the label and, in reliance on the express and implied representations, purchased the Real Ham Bone For Dogs. *Id.* ¶ 33. The SAC alleges that "[a]s a direct and proximate result of Defendants' violations of the Oregon Unlawful Trade Practices Act, Plaintiffs and the members of the Oregon sub-Class have suffered injury and incurred actual damage, including the cost of purchasing the Real Ham Bone For Dogs." Plaintiff Rodney Canutt seeks to recover money based on the alleged misrepresentation that the bone was safe for his pet. The SAC does not allege that Rodney Canutt read the label or purchased the product. The SAC does not allege that Plaintiff Rodney "loss of money

or property . . . was *caused by* the unlawful trade practice." *Pearson*, 361 P.3d at 28. The Court concludes that Rodney Canutt has not alleged a claim for relief under ORS 646.638(1). Defendants' motion to dismiss is granted.

### F. Remedies

Defendants contend that the SAC improperly fails to identify which remedies are sought under each cause of action. The Court concludes that the SAC makes it clear what specific remedies are sought under each claim. Defendants' motion to dismiss is denied.

## IV. Conclusion

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 40) is granted as follows:

1. Plaintiffs' claim for breach of implied warranty is dismissed.
2. Plaintiff Rodney Canutt's claim under Oregon's Unlawful Trade Practices Act, ORS 646.638(1) is dismissed.

Defendants' motion to dismiss (ECF No. 40) is denied in all other respects.

DATED: 7/21/16

**WILLIAM Q. HAYES**
United States District Judge