# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHRISTIE REED, PAUL BENESCH, REBECCA BRANDEL, DIANE CANUTT, ROD CANUTT, CRYSTAL LEWIS, RENE LUCHT, DIANE ORTMAN, DEBRA PORWOLL and KRIS VOSBURGH, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DYNAMIC PET PRODUCTS and FRICK'S MEAT PRODUCTS, INC.,<br><br>Defendants. | CASE NO. 15cv0987-WQH-DHB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss/Motion for Judgment on the Pleadings filed by Defendants. (ECF No. 102).

## BACKGROUND FACTS

On May 1, 2015, Plaintiff Khristie Reed commenced this action on behalf of herself and others similarly situated by filing a class action complaint against Defendants Dynamic Pet Products and Frick's Meat Products, Inc. (ECF No. 1). Plaintiff alleged that Defendant Missouri corporations falsely advertised that the "Dynamic Pet Products Real Ham Bone for Dogs" was safe for dogs though the product

was inherently dangerous and caused severe internal injury and death.

On January 15, 2016, Plaintiff Reed and others filed the First Amended Complaint against Defendants. (ECF No. 33).

On January 26, 2016, Plaintiffs filed a Second Amended Complaint alleging fraud, negligent misrepresentation, and breach of implied warranty as well as violation of consumer protection laws in California, Florida, Illinois, Louisiana, Minnesota, New York, North Carolina, Oregon, and Washington. (ECF No. 37).

On May 16, 2016, a separate group of plaintiffs filed a class action against Defendants Dynamic Pet Products and Frick's Meat Products, Inc. in Missouri state court on behalf of a class of Missouri purchasers. *Taylor, et al. v. Dynamic Pet Products, LLC, et al.*, No. 1616-CV11531. ("*Taylor*"). Plaintiffs in *Taylor* alleged Defendants falsely marketed Real Ham Bone for Dogs as safe for dogs though the product was inherently dangerous and caused severe internal injury and death.

On July 21, 2016, the Court issued an order granting in part and denying in part a motion to dismiss filed by Defendants. (ECF No. 48). The Court granted the motion to dismiss the claim for breach of implied warranty and the claim under the Oregon Unlawful Trade Practices Act, and denied the motion in all other respects.

On March 31, 2017, Plaintiff Stephanie Brown, a Missouri resident, filed a class action complaint alleging claims for fraud, negligent misrepresentation, and violation of the Missouri Merchandising Practices Act against Defendants in this Court. Brown alleged that Defendants falsely advertised that Real Ham Bone for Dogs as safe for dogs though the product was inherently dangerous and caused severe internal injury and death. *Brown v. Dynamic Pet Products, et al.*, Civil No. 17cv659 WQH ("*Brown*"). The *Brown* case was related to this case and assigned to this Court.

In February and March 2017, the parties in this case, the *Taylor* case, and the *Brown* case participated in mediation sessions in Missouri.

Shortly after the settlement discussions, the plaintiffs in the *Taylor* case reached a settlement with Defendants. The settlement included a broad release of claims related

to the Real Ham Bone for Dogs. Under the terms of the settlement, the *Taylor* plaintiffs would amended their complaint in the Missouri state court to identify a class of persons in the United States who purchased Real Ham Bone for Dogs for purposes other than resale and seek preliminary approval for a class action settlement.

On April 4, 2017, the *Taylor* plaintiffs filed the First Amended Class Action Petition alleging a class action on behalf of persons in the United States who purchased Real Ham Bone for Dogs for purposes other than resale from January 1, 2011 to the present.

On April 12, 2017, the Missouri state court set a preliminary approval hearing date of April 19, 2017 in the *Taylor* case.

On April 17, 2017 and April 18, 2017, the *Taylor* plaintiffs and Defendants Dynamic Pet Products and Frick's Meat Products, Inc. executed a Settlement Agreement.

On April 18, 2017, the Settlement Agreement was filed in the *Taylor* case.

On April 19, 2017, the *Taylor* court held a preliminary approval hearing. Counsel in the *Reed* case and the *Brown* case did not attend the hearing for preliminary approval. At the preliminary approval hearing, counsel for the *Taylor* plaintiffs advised the Missouri court, "I gave the *Reed* counsel notice of this hearing, Your Honor, so that he would be aware – they would be aware of that and participate if they wished. So this Court issued its order setting this on April 12th, I think in the afternoon. The next morning, on the 13th of April, I sent by email the notice to counsel." (ECF No. 104-3 at 5).

On April 19, 2017, the *Taylor* court issued a preliminary order approving the settlement and setting dates for notice, opt-outs, and objections.

On May 5, 2017, the *Reed* plaintiffs and the *Brown* plaintiff filed a motion to intervene in the *Taylor* case which was denied by the Missouri court on June 6, 2017.

On July 11, 2017, the *Reed* plaintiffs and the *Brown* plaintiff filed objections to the settlement agreement and notice of intent to appear at the final settlement approval

hearing in the *Taylor* case.

On July 17, 2017, the parties filed the Joint Motion to Stay this Action. (ECF No. 86). The parties stated that "the parties reached a global class action settlement" in *Taylor* case "that, upon court approval, would potentially resolve the claims pending before this Court[.]" *Id.* at 2.

On August 3, 2017, the Missouri court held a final approval hearing. Counsel was present for objectors representing the *Reed* plaintiffs and the *Brown* plaintiffs.

On August 11, 2017, the Circuit Court of Jackson County, Missouri entered a final order and judgment overruling the objections and approving the class action settlement. The final order provided that a nationwide class certification for settlement purposes was proper, that class members had adequate notice, and that class members were adequately represented. The final order provided,

> The settlement is the result of arm's length negotiations between adverse parties and was fairly negotiated. Counsel on both sides are competent and have represented their clients vigorously. There is no evidence of fraud or collusion behind the Settlement, which was reached after two all-day mediation conferences supervised by John R. Phillips, a mediator with substantial experience in resolving complex class actions. The negotiation process was transparent and inclusive, and the Settlement is not a product of reverse auction.

Request for Judicial Notice (ECF No. 102-3 at 44).[1] The Final Order determined that "the Settlement is fair, reasonable, and adequate pursuant to Missouri Rule of Civil Procedure 52.08 and applicable law." *Id.* at 46. The Final Order stated,

> [A]ll members of the Class who have not timely elected to be excluded from the Class are bound by the terms of the Settlement Agreement. This Final Order and Judgment shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by the named Plaintiffs, Class members, and the Released Parties as set forth in the Settlement

---

[1] Defendants' Request for Judicial Notice (ECF No. 102-3) and Plaintiffs' Request for Judicial Notice (ECF No. 105) are granted. Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotations omitted). "[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).

> Agreement, including all claims for restitution, damages, injunctive relief or other forms of relief addressed therein.
>
> This judgment is on the merits, with prejudice, as to the named Plaintiffs and all members of the Class who did not opt out pursuant to the terms of the Settlement Agreement. As set forth in the Settlement Agreement, all Class members who have not timely elected to be excluded from the Class are hereby deemed to have released and discharged the Released Persons for settled claims pursuant to the Settlement Agreement. This release applies to all claims relating to, regarding, or arising out of (i) the manufacture, distribution, marketing, advertising or sale of the Real Ham Bone For Dogs, (ii) any Class member's purchase or use of the Real Ham Bone For Dogs, or (iii) any pet injury, pet death, or property damage allegedly resulting from use of the Real Ham Bone For Dogs.

*Id.* The Final Order stated,

> The Court has considered the objections to the Settlement filed by Khristie Reed, Paulson, Rebecca Brandel, Diane Canutt, Rod Canutt, Crystal Lewis, Rene Lucht, Diane Ortman, Debra Porwoll, Kris Vosburgh, and Stephanie Brown (the "Reed Objectors"), Pamela Sweeney, Victoria Mateer, David Marklein, and Tisha Carey and overrules all of the objections.
>
> Counsel for the Reed Objectors, Timothy Blood, was provided notice of the Court's preliminary approval hearing and had the opportunity to object to the notice plan, the claim form, and other aspects of the Settlement at that time. No objections were raised, but had they been, many of Mr. Blood's concerns could easily have been addressed and eliminated. None of the objections prevent settlement approval, but Mr. Blood's failure to appear at the preliminary approval hearing and his waiting to object to the Settlement until the final approval hearing has impeded the timely consideration of many of the objections he later raised to the settlement process in which he was a significant participant.
>
> The Court rejects the suggestion by the Reed Objectors that the Settlement is the product of collusion or a reverse auction. The declarations of the parties' counsel and the mediator amply demonstrate that the Settlement resulted from vigorous, arm's length negotiations between accomplished attorneys on both sides. Counsel for the Reed Objectors were involved extensively in the mediations that led to the Settlement and were in no way excluded from this process. When given the opportunity to identify changes to the Settlement that they believed were desirable, they did not respond. These facts and the other evidence in the record concerning the settlement negotiations refute any notion that the Settlement is collusive or a reverse-auction settlement.
>
> The Court overrules the objection by the Reed Objectors and certain other objectors to the reversionary aspect of the Settlement. Based on the evidence and arguments presented in connection with final settlement approval, the Court reaffirms its finding at the preliminary approval hearing that reversion of unclaimed funds is appropriate in this case. The objectors' suggestion that unclaimed funds should be donated to charity through the cy pres doctrine is without merit, as donations to charity do not benefit the Class members.

> The Court finds that the $1,025,000 amount allotted to product refund claims is fair, adequate, and reasonable based on the low complaint rate from consumers about the product, and the per-claim limits on these claims are reasonable and appropriate given the low cost of the product. Indeed, similar limits on product refund claims are a common feature of class action settlements. The information requested by the claim form is not unreasonable, and the Court rejects the assertion that the claim form and caps on product purchase claims were designed to minimize the payout on these claims. The fact that more than 37,000 product purchase claims have been made through July 29, 2017 demonstrates that the Settlement is beneficial to class members who purchased the product and wish to participate in the Settlement. Accordingly, the Court overrules the objections addressing the product purchase refund component of the Settlement.
>
> The Court similarly overrules the objections addressing the amounts provided for pet injury/property damage claims both in the aggregate and on a per-claim basis. The Court finds that the $325,000 assigned to pet injury/property damage claims is fair, reasonable and adequate. This capped amount per claim year was appropriately determined based on the low complaint rate for the product, the number of claims Defendants had separately paid before and during the litigation, and the average amount of the claims paid by Defendants. The $2,500 per-claim cap for these claims also is reasonable given the average amount of the claims paid by Defendants and filed to date. The Court finds it is appropriate and reasonable to condition payment on pet-injury claims on satisfactory proof that the product caused the asserted injuries, and to limit the recovery on these claims to out-of-pocket losses for veterinary expenses as opposed to subjective claims for lost property value arising out of pet deaths. The requirements of the claims process are a reasonable trade-off to protect against fraudulent or otherwise illegitimate claims and they also reflect the compromise nature of this settlement.
>
> The Court finds that Class members were provided sufficient notice about the amount Class Counsel would request for attorneys' fees and expenses and were given a reasonable opportunity to assert objections to this request, notwithstanding that the deadline for objections was prior to the filing of the Application. Although the Court recognizes that a different sequence of events might have had some advantages, the procedure followed in this case satisfies due process and has been approved by the Missouri Court of Appeals. *See City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276, 286 (Mo. Ct. App. 2016).

*Id*. at 48-50.

*Reed* and *Brown* Plaintiffs, as objectors in the *Taylor* case, filed an appeal from the *Taylor* Final Judgment and Order to the Missouri Court of Appeals.

On August 28, 2018, the Missouri Court of Appeals for the Western District affirmed the trial court's order. The Court of Appeals addressed "three points on appeal." (ECF No. 102-3 at 88). On point one, the Missouri court concluded that the trial court properly denied intervention to the objectors because intervention was

unnecessary to ensure the objector's standing to appeal. On point two, the Missouri court found that the objectors had abandoned the objection to the declaration of the mediator and that the declaration of the mediator was cumulative of other evidence presented. On point three, the Missouri court found that the objectors challenge to the settlement was waived. The Missouri court stated,

> Objectors' counsel were involved in the settlement negotiations from the beginning; they were invited to and participated in both Missouri mediation sessions. They were well aware of the proposed terms of the agreement, including the anticipated forms and methods of notice as well as the proposed claims procedure, and they had every opportunity to voice their concerns both before and at the preliminary approval hearing. But they chose not to appear and not to lodge any objections until the objection deadline set by the court as part of its preliminary approval order. And, at that time, they challenged virtually every aspect of the settlement agreement. Parties "should not engage in sandbagging tactics, by participating in . . . meetings and [mediation] sessions but then [later] claiming that the entire procedure was fatally flawed from the time [it commenced]." *O'Connell v. Sch. Dist. of Springfield R-12*, 830 S.W.2d 410, 421 (Mo. banc 1992) (Blackmar, Sr. J., concurring).
>
> Here, because Objectors participated in the mediation process and had the opportunity to raise their challenges either before or at the preliminary approval hearing, but instead chose to remain silent, their challenges are now waived. To the extent that Objectors challenge the attorneys' fee award, which arguably was not fully known at the time of the preliminary approval hearing, those claims are not identified in the point relied on and are, therefore, waived. In short, when Objectors chose to sit idly by and not raise any objections to the proposed settlement agreement, notice provisions, or claims procedures, wherein they were involved in negotiations, had full knowledge of the proposed agreement, and had the opportunity to challenge any of the terms at the preliminary approval hearing but chose not to appear, they waived the challenges they now raise on appeal.

(ECF No. 102-2 at 95 (footnote omitted)).

On December 4, 2018, the Supreme Court of Missouri denied review.

On February 7, 2019, Defendants filed a motion to dismiss or for judgment on the pleadings. Plaintiffs filed an opposition.

## CONTENTIONS OF THE PARTIES

Defendants contend that Plaintiffs' claims in this case are barred by res judicata and the Full Faith and Credit Act, 28 U.S.C. § 1738. Defendants assert that the Missouri courts would give preclusive effect to the *Taylor* judgment under res judicata, and that the settlement release in *Taylor* covers the claims in this action. Defendants

assert that this action and the *Taylor* action seek monetary relief from the same set of facts – that Defendants' product, Real Ham Bone for Dogs, falsely advertised that it was safe for dogs. Defendants assert that Plaintiffs in the present action are members of the class in *Taylor,* Plaintiffs did not opt out of the *Taylor* settlement, and Plaintiffs were in privity with the class representatives in *Taylor*. Defendants assert that Plaintiffs cannot make a showing that the *Taylor* judgment did not comport with due process. Defendants assert that the Missouri trial court and the Missouri Court of Appeals held that there was adequate notice, opportunity to be heard, and adequate representation ending the due process inquiry in this Court.

Plaintiffs contend that this Court must resolve disputed facts in order to determine whether the *Taylor* judgment is entitled to full faith and credit. Plaintiffs assert that the *Taylor* judgment is constitutionally infirm because the settlement approved by the Missouri court was the product of a collusive reverse auction. Plaintiffs assert that the class counsel and class representative in *Taylor* were inadequate and that they are entitled to conduct limited discovery into the procedural fairness of the Missouri settlement. Plaintiffs assert that the Missouri court protected the due process rights of the Missouri residents but refused to consider the federal due process violations raised by Plaintiffs in the objections to the *Taylor* settlement.

## ANALYSIS

In *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996), the United States Supreme Court stated,

> The Full Faith and Credit Act mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. The Act thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state. Federal courts may not "employ their own rules ... in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

On remand in *Matsushita*, the Court of Appeals for the Ninth Circuit addressed the argument from the Epstein appellants that the court cannot accord full faith and

credit to the Delaware judgment because it violated their due process rights to adequate representation and judicial supervision of the Delaware proceedings. The Court of Appeals concluded that the first step "to determine whether the Delaware judgment could bar the litigation of exclusively federal claims required the Court to 'look to the law of the rendering State to ascertain the effect of the judgment.'" *Epstein v. MCA*, 179 F.3d 641, 644 (9th Cir. 1999)(quoting *Matsushita,* 516 U.S. at 375) (*Epstein II)*. The Court of Appeals determined that the Delaware judgment satisfied due process requirements and that the Delaware court would find that the Epstein appellants were bound by the judgment. The Court of Appeals concluded that there was no exception to the application of §1738 created by a constitutional challenge to the judgment. The Epstein appellants urged the Court to allow them to collaterally challenge the adequacy of representation in the Delaware class action proceedings. The Court of Appeals declined explaining,

> Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court.

*Id*. at 648.

Under Missouri law, res judicata bars relitigation of claims that previously have been adjudicated in a proceeding between the same parties or those in privity with them. "Res judicata applies where "four identities" are present: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. When these four identities concur, res judicata operates to bar 'any claim that was previously litigated between the same parties or those in privity with them.'" *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W. 3d 354, 363 (Mo. Ct. App. 2015).

Plaintiffs in this case do not dispute the identity of issues, causes of action, or privity with the plaintiffs in *Taylor*. Plaintiffs challenge only the constitutional validity of the *Taylor* judgment on the grounds that the parties in *Taylor* engaged in a reverse

auction, reversionary settlement which does not meet the test of procedural fairness. Plaintiffs contend that the *Taylor* settlement represents a complete breakdown in the adversarial process depriving the absent class members of adequate representation.

The Missouri trial court stated in the *Taylor* Final Judgment:

> The settlement is the result of arm's length negotiations between adverse parties and was fairly negotiated. Counsel on both sides are competent and have represented their clients vigorously. There is no evidence of fraud or collusion behind the Settlement, which was reached after two all-day mediation conferences supervised by John R. Phillips, a mediator with substantial experience in resolving complex class actions. The negotiation process was transparent and inclusive, and the Settlement is not a product of reverse auction.

(ECF No. 102-3 at 6). The record explicitly confirms that the Missouri court would afford a preclusive effect to the *Taylor* judgment to bind the absent class members to the terms of the settlement. The *Missouri* trial court stated:

> [A]ll members of the Class who have not timely elected to be excluded from the Class are bound by the terms of the Settlement Agreement. This Final Order and Judgment shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by the named Plaintiffs, Class members, and the Released Parties as set forth in the Settlement Agreement, including all claims for restitution, damages, injunctive relief or other forms of relief addressed therein.

*Id*. The Missouri Court of Appeals concluded that "[t]he trial court committed no error in approving the settlement agreement over the Objectors' objections. Its judgment is affirmed." (ECF No. 102-3 at 96). The Missouri Supreme Court denied review.

Res judicata is proper in this case unless the judgment was entered in violation of the due process rights of the absent class members. "Due process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review." *Epstein II*, 179 F.3d at 648.

The Court looks first to the proceedings in *Taylor*. "Normally we will satisfy that the party received the requisite notice, opportunity to be heard, and adequate representation by referencing the state court's findings. *See Epstein II*, 179 F.3d at 648." *Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010). The *Reed* and *Brown*

plaintiffs filed objections in the *Taylor* case asserting that the settlement was a reverse auction which failed to meet the requirements of due process. The *Taylor* Final Order states that "the Court has considered the objections to the Settlement filed by Khriste Reed Paulson, ... and Stephanie Brown and overrules all of the objections." The Court addressed each objection,

> The Court rejects the suggestion by the Reed Objectors that the Settlement is the product of collusion or a reverse auction. The declarations of the parties' counsel and the mediator amply demonstrate that the Settlement resulted from vigorous, arm's length negotiations between accomplished attorneys on both sides. Counsel for the Reed Objectors were involved extensively in the mediations that led to the Settlement and were in no way excluded from this process. When given the opportunity to identify changes to the Settlement that they believed were desirable, they did not respond. These facts and the other evidence in the record concerning the settlement negotiations refute any notion that the Settlement is collusive or a reverse-auction settlement.
>
> The Court overrules the objection by the Reed Objectors and certain other objectors to the reversionary aspect of the Settlement. Based on the evidence and arguments presented in connection with final settlement approval, the Court reaffirms its finding at the preliminary approval hearing that reversion of unclaimed funds is appropriate in this case. The objectors' suggestion that unclaimed funds should be donated to charity through the cy pres doctrine is without merit, as donations to charity do not benefit the Class members. . . .
>
> The Court similarly overrules the objections addressing the amounts provided for pet injury/property damage claims both in the aggregate and on a per-claim basis. The Court finds that the $325,000 assigned to pet injury/property damage claims is fair, reasonable and adequate. This capped amount per claim year was appropriately determined based on the low complaint rate for the product, the number of claims Defendants had separately paid before and during the litigation, and the average amount of the claims paid by Defendants. The $2,500 per-claim cap for these claims also is reasonable given the average amount of the claims paid by Defendants and filed to date. The Court finds it is appropriate and reasonable to condition payment on pet-injury claims on satisfactory proof that the product caused the asserted injuries, and to limit the recovery on these claims to out-of-pocket losses for veterinary expenses as opposed to subjective claims for lost property value arising out of pet deaths. The requirements of the claims process are a reasonable trade-off to protect against fraudulent or otherwise illegitimate claims and they also reflect the compromise nature of this settlement.
>
> The Court finds that Class members were provided sufficient notice about the amount Class Counsel would request for attorneys' fees and expenses and were given a reasonable opportunity to assert objections to this request, notwithstanding that the deadline for objections was prior to the filing of the Application. Although the Court recognizes that a different sequence of events might have had some advantages, the procedure followed in this case satisfies due process and has been approved by the

Missouri Court of Appeals. *See City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276, 286 (Mo. Ct. App. 2016).

(ECF No. 102-3 at 48-50). The record explicitly confirms that the Missouri Court considered the factual objections to the settlement in *Taylor* raised by the plaintiffs in this case. The Missouri court concluded that the settlement was not collusive and complied with due process. Plaintiffs raise the same factual objections to the application of res judicata in this case. Plaintiffs have not presented this court with "reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982). Plaintiffs received adequate notice, filed objections, and appeared in the *Taylor* case. The Missouri trial court addressed each objection with specificity. The Missouri Court of Appeals affirmed and the Missouri Supreme Court denied review. Plaintiffs in this case, as class members in the *Taylor* case, were afforded a full and fair opportunity to litigate the issues of adequate representation and collusive settlement in the *Taylor* case. The Court concludes that the *Taylor* judgment is entitled to full faith and credit under 28 U.S.C. § 1738. This Court has no role in collateral review of the *Missouri* judgment. *See Epstein II,* 179 F.3d at 648 ("[A]bsent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court."). Based upon the record, Defendants are entitled to dismissal of Plaintiffs' claims.

IT IS HEREBY ORDERED that the Motion to Dismiss/Motion for Judgment on the Pleadings filed by Defendants (ECF No. 102) is granted.

DATED: May 20, 2019

**WILLIAM Q. HAYES**
United States District Judge